[No. B127817. Second Dist., Div. Two. Nov. 4, 1999.]

LAURIE COOK JOHNSON, Plaintiff and Appellant, v.
KARLA E. KOTYCK, Individually and as Trustee, etc., Defendant and
Respondent.

84

## COUNSEL

Sullivan, Workman & Dee and Joseph S. Dzida for Plaintiff and Appellant.

Weinstock, Manion, Reisman, Shore & Neuman, Marc L. Sallus and Sussan H. Shore for Defendant and Respondent.

## OPINION

**BOREN, P. J.**—Is a beneficiary of an inter vivos trust entitled to receive trust accountings while the trustor is under the care and custody of a court-appointed conservator? We conclude that the beneficiary is not entitled to an accounting for a trust that remains revocable despite the infirmity of the trustor and the ensuing conservatorship.

### FACTS

Elisabeth Frudenfeld is the trustor and original trustee of an inter vivos trust created on December 7, 1987 (the Trust). On August 30, 1996, the superior court appointed a professional conservator to manage Frudenfeld's affairs after finding that Frudenfeld is unable to care for herself. The court also appointed legal counsel to represent Frudenfeld in all conservatorship proceedings. The successor trustee of the Trust is respondent Karla E. Kotyck, one of Frudenfeld's daughters.

The Trust and its April 9, 1992, amendment contain the following clause regarding revocation: "This declaration of trust, and the trusts evidenced

thereby, may be revoked at any time by the Trustor, during the lifetime of the Trustor, by the Trustor delivering written notice of revocation to the Trustee." The Trust also provides that it shall become irrevocable upon the death of the trustor.

A petition was brought under Probate Code section 17200 by appellant Laurie Cook Johnson, Frudenfeld's daughter and a Trust beneficiary.[1] Johnson asked the probate court (1) to order the trustee to prepare a report and accounting for the Trust and (2) to review the trustee's activities. Trustee Kotyck demurred to Johnson's petition, maintaining that Johnson has no right to receive accountings or to question the trustee's actions with regard to the Trust. The probate court sustained Kotyck's demurrer to the petition without leave to amend and dismissed the petition with prejudice. This timely appeal followed.

DISCUSSION

### 1. Appealability

The probate court sustained respondent's demurrer to appellant's section 17200 petition without leave to amend. We shall construe the subsequent order of dismissal as a denial of the petition. The order is appealable. (§ 1304, subd. (a).)

### 2. Trial Court's Jurisdiction

■ A trust beneficiary may petition the probate court regarding matters affecting the internal affairs of a trust, unless the trust instrument expressly withholds authority to proceed. Among other powers, the court has jurisdiction (1) to interpret the terms of the trust, (2) to determine the existence or nonexistence of any power, privilege, duty or right, (3) to instruct the trustee, and (4) to compel the trustee to report information about the trust or account to the beneficiary. (§ 17200, subds. (b)(1), (2), (6), (7); *Estate of Heggstad* (1993) 16 Cal.App.4th 943, 951-952 [20 Cal.Rptr.2d 433].)

The probate court's jurisdiction extends to the type of trust involved in this appeal. "Section 17200 makes no distinction between inter vivos trusts (i.e., living trusts) and testamentary trusts (i.e., trusts created by a will). Further, case law supports a probate court's jurisdiction under section 17200 to consider petitions regarding inter vivos trusts [citation], and nothing in the statutory scheme indicates any legislative intent to restrict the jurisdiction of the probate court to only those matters arising after the death of a trustor."

---

[1] All future undesignated statutory references are to the Probate Code.

(*Conservatorship of Irvine* (1995) 40 Cal.App.4th 1334, 1342 [47 Cal.Rptr.2d 587].)

3. *Rights of a Beneficiary of an Inter Vivos Trust*

 Appellant Johnson asks this court to determine only one disputed point of law, to wit: Does the Probate Code give Johnson the right to receive trust accountings from her sister Kotyck, so long as their mother is alive and her affairs are being administered by a conservator? The short answer is "No" and the explanation follows.

Johnson agrees at the outset that the trustee of a revocable trust generally has no duty to report or account to the trust beneficiaries and that the beneficiaries have no right to receive such accountings. (See § 16064.) However, she goes on to argue that "since the settlor has been declared incompetent, she no longer has the power to revoke." Johnson reasons that the beneficiaries of the Trust obtained the right to an accounting once Mrs. Frudenfeld became a conservatee, because "No one has the power to revoke" and Johnson's rights to take from the trust are now vested. As we shall see, it is untrue that no one has the power to revoke the conservatee's inter vivos trust.

 Under the Probate Code, the legal rights of a conservatee— including the right to revoke a trust—pass to the conservator, under the close scrutiny of the superior court. The conservator may petition the court for an order "Exercising the right of the conservatee (i) to revoke a revocable trust or (ii) to surrender the right to revoke a revocable trust . . . ." (§ 2580, subd. (b)(11).)[2] The court is, in this situation, "the conservatee's decision-making surrogate" because "[i]n essence the statute permits the court to substitute its judgment for that of a conservatee." (*Conservatorship of Hart* (1991) 228 Cal.App.3d 1244, 1250 [279 Cal.Rptr. 249].) The court must satisfy itself that it is "fully and fairly informed" about the proposed exercise of the conservatee's legal rights. (*Id.* at p. 1254.)

The only limitation on the court's ability to authorize the revocation of a conservatee's revocable trust is if the trust instrument "(i) evidences an intent to reserve the right of revocation exclusively to the conservatee, (ii) provides expressly that a conservator may not revoke the trust, or (iii) otherwise evidences an intent that would be inconsistent with authorizing or requiring the conservator to exercise the right to revoke the trust." (§ 2580,

---

[2]The conservator may also ask the probate court to authorize the *creation* of a revocable trust "for the benefit of the conservatee or others" which "may extend beyond the conservatee's disability or life." (§ 2580, subd. (b)(5).)

subd. (b)(11).) We have examined the Trust in this case and all of its amendments. There is nothing in the Trust or its amendments which expressly or impliedly prevents the conservator from revoking the Trust or which reserves the right of revocation exclusively to Frudenfeld. Thus, the limitations listed above do not apply here.

Johnson relies primarily on section 15800, which postpones the rights of trust beneficiaries "during the time that a trust is revocable and the person holding the power to revoke the trust is competent." Contrary to Johnson's reading of it, this provision does *not* mean that a trust automatically becomes irrevocable when the trustor becomes a conservatee. The Law Revision Commission comment to section 15800 explains: "This section has the effect of postponing the enjoyment of rights of beneficiaries of revocable trusts until the death or incompetence of the settlor *or other person holding the power to revoke the trust.*" (Cal. Law Revision Com. com., reprinted at 54 West's Ann. Prob. Code (1991 ed.) foll. § 15800 p. 644, italics added.) It is clear from section 2580 that a conservator, working together with the superior court as the conservatee's decisionmaking surrogate, is a "person holding the power to revoke the trust."[3]

The reading of section 15800 proposed by Johnson would undermine the statutory scheme relating to revocable trusts. So long as a trust is revocable, a beneficiary's rights are merely potential, rather than vested. The beneficiary's interest could evaporate in a moment at the whim of the trustor or, in the case of a conservatorship, at the discretion of the court. Giving a beneficiary with a contingent, nonvested interest all the rights of a vested beneficiary is untenable. We cannot confer on the contingent beneficiary rights that are illusory, which the beneficiary only *hopes* to have upon the death of the trustor, but only if the trust has not been previously revoked and the beneficiary has outlived the trustor. For this reason, we conclude that section 15800 does not give a beneficiary such as Johnson any right to a trust accounting so long as a conservator retains authority under section 2580 to have the trust revoked and to abrogate Johnson's interest in the trust proceeds.

Johnson's primary concern is that the court-appointed professional conservator may be doing an inadequate job of supervising Frudenfeld's estate, including the Trust, thereby enabling Kotyck to engage in mismanagement or misappropriation of Trust assets. Mistrustful of the conservator's abilities or diligence, Johnson wants to oversee Frudenfeld's estate herself to ensure proper Trust management.

---

[3]*Sections 2580 and 15800 both became operative on the same day, July 1, 1991, and are* both part of the same enactment. (Stats. 1990, ch. 79, § 14, p. 463.) This only underscores the need to read the two sections harmoniously.

There are two ways to address Johnson's concerns, both falling within the Probate Code's conservatorship provisions.

First, the conservator is accountable to Johnson and is responsible for preventing the misappropriation of the conservatee's assets. ▮▮ The conservatorship statutes and the substituted judgment statutes in the Probate Code are designed to protect the conservatorship estate for the benefit of the conservatee *and* for the benefit "of the persons who will ultimately receive it from the conservatee." (*Conservatorship of Hart, supra,* 228 Cal.App.3d at p. 1253.) In other words, the conservatorship is designed to protect persons like Johnson as well as Frudenfeld. If the conservator is concerned that estate's assets are being wasted or misappropriated, the conservator is empowered to ask the court to compel "a person who has possession or control of property in the estate of the ward or conservatee to appear before the court and make an account under oath of the property and the person's actions with respect to the property." (§ 2619, subd. (a).) Kotyck, as trustee of Frudenfeld's inter vivos trust, is a person in control of property in the conservatorship estate and must therefore account for her actions with respect to the Trust property.

The Probate Code requires that the conservator account for the property of the conservatee. The conservator must file an inventory and appraisal of the conservatee's estate within 90 days after the initial appointment. (§ 2610.) The conservator must thereafter account to the court, showing receipts, disbursements, transactions and the balance of property on hand. (§ 2620.) Failure to account subjects the conservator to the risk of punishment for contempt. (§ 2629.) When an account is filed, "any relative" of the conservatee may file written objections to the account. (§ 2622.) Thus, there is already a mechanism in place through which Johnson, as the daughter of the conservatee, can monitor the outflow from Frudenfeld's estate and ensure the diligent performance of the conservator's duties by simply scrutinizing the conservator's accountings and objecting when appropriate. Further, if the conservator breaches its fiduciary duty to Frudenfeld by allowing her estate to be frittered away, the conservator is chargeable for "[a]ny loss or depreciation in value of the estate," with interest. (§§ 2101, 2401.3.) In other words, the conservator ignores misappropriations of the conservatee's property at its own peril.

During oral argument, Johnson asserted that the provisions of section 2585 "immunize" the conservator from liability for wrongdoing. This is not correct. Section 2585 only states that the conservator is not required to propose any action under section 2580; i.e., the conservator is not required, for example, to propose the creation or revocation of a trust for the conservatee, or to enter a contract on behalf of the conservatee, or to provide gifts

to charity, relatives, or friends on behalf of the conservatee. (§ 2580, subds. (a)(3), (b)(4), (5), (11).) However, Johnson as an "interested person" may file a petition of her own in the probate court under section 2580 to compel the conservator to take action. (See Cal. Law Revision Com. com., reprinted at 52 West's Ann. Prob. Code, *supra*, foll. § 2585, p. 829 ["The remedy for a person who believes that some action should be taken by the conservator under this article is to petition under Section 2580 for an order requiring the conservator to take such action with respect to estate planning or making gifts as is set out in the petition."]) Section 2585 does not immunize the conservator from wrongdoing or permit the conservator to look the other way if the conservatee's assets are being misappropriated by others.

Second, the conservatorship statutes provide a direct means for a prospective beneficiary like Johnson to investigate wrongdoing by a person holding the conservatee's property. Section 2616 authorizes the filing of a petition concerning a conservatee's assets by an "interested person, including persons having only an expectancy or prospective interest in the estate." (§ 2616, subd. (a)(3).) Johnson is an interested person within this definition. If she chooses, Johnson may charge that Kotyck "has wrongfully taken, concealed, or disposed of property of the ward or conservatee." (§ 2616, subd. (b)(1).) The court may then order that Kotyck answer interrogatories or appear in court to be examined under oath, or both. (§§ 2616, 2617.) In particular, a trustee who has wrongfully misappropriated the funds of a ward is subject to citation and examination under section 2616. (*In re Ochoa* (1942) 50 Cal.App.2d 457, 458-459 [123 P.2d 106] [applying former § 1552, the predecessor statute to § 2616].) Anyone who wrongfully takes the property belonging to a conservatee, including a trustee, is personally liable for twice the value of the misappropriated property. (§ 2619.5.)

In short, there are satisfactory means by which Johnson can monitor the Trust and the trustee's activities during the pendency of the conservatorship. Much as Johnson would like to have a court declare the Trust to be irrevocable during Frudenfeld's lifetime, contrary to the terms of the Trust, it is unnecessary to do so to protect Johnson's interest. The Legislature has devised the methods we have described above to protect the rights of persons interested in the estate of a conservatee. The Legislature has also determined that the conservator should retain the right to seek revocation of an inter vivos trust during the conservatee's lifetime. Johnson cannot be accorded all the rights of a vested beneficiary before the death of the trustor.[4]

---

[4]Respondent attempts to argue the issue of undue influence, an issue which the trial court never reached. The argument exceeds the limited scope of the appeal.

## DISPOSITION

The judgment is affirmed.

Zebrowski, J., and Mallano, J.,* concurred.

A petition for a rehearing was denied December 6, 1999, and appellant's petition for review by the Supreme Court was denied February 23, 2000.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.