Filed 12/20/12

# IN THE SUPREME COURT OF CALIFORNIA

Estate of WILLIAM A. GIRALDIN,  )
Deceased.  )
_____)
  )
CHRISTINE GIRALDIN et al.,  )
  )
      Plaintiffs and Respondents,  )
  )          S197694
      v.  )
  )       Ct.App. 4/3
TIMOTHY GIRALDIN et al.,  )       G041811
  )
      Defendants and Appellants.  )     Orange County
_____)   Super. Ct. No. A240697

       A revocable trust is a trust that the person who creates it, generally called the settlor,[1] can revoke during the person's lifetime. The beneficiaries' interest in the trust is contingent only, and the settlor can eliminate that interest at any time. When the trustee of a revocable trust is someone other than the settlor, that trustee owes a fiduciary duty to the settlor, not to the beneficiaries, as long as the settlor is alive. During that time, the trustee needs to account to the settlor only and not also to the beneficiaries. When the settlor dies, the trust becomes irrevocable, and the beneficiaries' interest in the trust vests. We must decide whether, after the settlor dies, the beneficiaries have standing to sue the trustee for breach of the fiduciary duty committed while the settlor was alive and the trust was still revocable.

_____

[1]    See Black's Law Dictionary (9th ed. 2009) page 1497, column 2.

1

Because a trustee's breach of the fiduciary duty owed to the settlor can substantially harm the beneficiaries by reducing the trust's value against the settlor's wishes, we conclude the beneficiaries do have standing to sue for a breach of that duty after the settlor has died. We reverse the judgment of the Court of Appeal, which concluded the beneficiaries have no such standing.

## I. FACTUAL AND PROCEDURAL HISTORY

Because neither party petitioned for rehearing, we take most of these facts from the Court of Appeal's opinion. (See Cal. Rules of Court, rule 8.500(c)(2).)

William Giraldin and Mary Giraldin were married in 1959. When they married, William had four children and Mary had three.[2] William adopted Mary's children. Together, they had twin sons, Timothy and Patrick. William was a successful businessman and investor and accumulated a substantial fortune.

In February 2002, William created the revocable trust at issue, the William A. Giraldin Trust (the trust), and made Timothy the trustee. William was the sole beneficiary during his lifetime. The remainder beneficiaries were Mary, who was entitled to the benefits of the trust during her lifetime, and then the nine children, who would share equally in what remained after both William and Mary were deceased. William reserved to himself specified rights, including the rights to amend or revoke the trust, to add or remove property from the trust, to remove the trustee, and to direct and approve the trustee's actions, including any investment decisions. The trust document provided that William could exercise these rights only in writing.

The trust document also provided that "[d]uring [William's] lifetime, the Trustee shall distribute to [William] that amount of net income and principal as

---

[2] To avoid confusion, we will sometimes refer to members of the Giraldin family by their first names.

2

[William] direct[s]." In the event William was declared to be incapacitated, the trustee was instructed to distribute the amount of net income and principal the trustee deemed to be appropriate to support William's "accustomed manner of living" with the understanding that "the rights of remainder beneficiaries shall be of no importance." The trust document also provided that "[d]uring [William's] lifetime, the trustee shall have no duty to provide any information regarding the trust to anyone other than [William]." After William's death, if Mary survived him, the trustee "shall have no duty to disclose to any beneficiary other than [Mary] the existence of this trust or any information about its terms or administration, except as required by law." The document also specified that William "waive[d] all statutory requirements . . . that the Trustee . . . render a report or account to the beneficiaries of the trust."

The trust document also states that William "[did] not want the Trustee to be personally liable for his or her good faith efforts in administering the trust estate," and that "[t]he discretionary powers granted to the Trustee under this Trust Agreement shall be absolute. This means that the Trustee can act arbitrarily, so long as he or she does not act in bad faith, and that no requirement of reasonableness shall apply to the exercise of his or her absolute discretion." William "waive[d] the requirement that the Trustee's conduct at all times must satisfy the standard of judgment and care exercised by a reasonable, prudent person. In particular, the decision of the Trustee as to the distributions to be made to beneficiaries under the distribution standards provided in this Trust Agreement shall be conclusive on all persons."

When first established, the trust contained no assets. The trust document indicated that William "had transferred and delivered to the Trustee the property described in schedule 1, attached," but the version of schedule 1 attached to the trust document was blank. It appears schedule 1 was never completed. Before

3

establishing the trust, William had indicated the intent to invest about $4 million, about two-thirds of his fortune, in a company his son Patrick had started some years before called SafeTzone Technologies Corporation (SafeTzone). Timothy was also a part owner of the company. In January 2002, William signed a document detailing his planned investment in the company. The day he executed the trust document, William also signed another document stating that "after the trust has been set up William A. Giraldin and Timothy W. Giraldin will begin the process of selling stock and converting assets to fulfill the investment into SafeTzone Technologies corporation of $4 million dollars." William signed other documents indicating his intent to invest the money in the company.

Between February 2002 and May 2003, William made six payments of various amounts to invest in SafeTzone, ultimately totaling more than $4 million. The company issued stock to William. After the investment was fully funded, the stock was transferred into the name of the trust. William died in May 2005. By this time, the investment in SafeTzone had gone badly, and the trust's interest in the company was worth very little.

Four of William's children, Patricia Gray, Christine Giraldin, Michael Giraldin, and Philip Giraldin (collectively plaintiffs), sued Timothy in his capacity as trustee of the trust for breach of his fiduciary duties. They alleged, in effect, that Timothy had squandered William's life savings for his and Patrick's benefit, depriving the other seven children of their benefits from the trust. Plaintiffs sought to remove Timothy as trustee and to compel him to account for his actions while acting as trustee. An amended petition alleged that Timothy should be

surcharged[3] for alleged breach of his fiduciary duties regarding the SafeTzone investment and in making loans to himself and Patrick from trust assets.[4]

A court trial was held in October and November 2008. After the trial, the court ruled in plaintiffs' favor. It found Timothy had violated his fiduciary duty in various respects. It also found that William did not authorize many of Timothy's actions in writing as the trust required, and that William "was not sufficiently mentally competent in late 2001 and thereafter to either analyze the benefits and risks of an investment in SafeTzone . . . or to authorize and direct [Timothy] to make such an investment." The court ordered Timothy be removed as trustee and that he make an accounting of the trust for the period of January 1, 2008 until his removal. Additionally, it ordered that Timothy be surcharged "for his breach of the Trust and breach of fiduciary duties owed to Decedent William G. Giraldin" in the amount of $4,376,044 for the SafeTzone investment and surcharged $625,619 for other "unsupported disbursements, distributions and loans of Trust funds . . . ." It also ordered that Patrick return to the trust $155,000 loaned to him from trust funds.

Timothy appealed, raising several issues. The Court of Appeal additionally asked the parties to brief the question of whether, as its opinion describes it, plaintiffs had "standing to maintain claims for breach of fiduciary duty and to seek an accounting against [Timothy] based upon his actions as trustee during the period prior to [William's] death." After receiving the briefing, it found plaintiffs

---

[3]     Black's Law Dictionary defines a "surcharge" in this context as the "amount that a court may charge a fiduciary that has breached its duty." (Black's Law Dict., *supra*, p. 1579, col. 1.)

[4]     Mary also filed her own petition to confirm her community interest in the trust and other community assets. Because no issue regarding this aspect of the case is before us on review, we do not mention it again.

5

had no such standing. It explained that Timothy's "duties as trustee were owed solely to [William] during [the time William was alive], *and not to the trust beneficiaries*. Thus [plaintiffs], as beneficiaries, lack standing to complain of any alleged breaches of those duties occurring prior to [William's] death. Moreover, the beneficiaries have no right to compel an accounting of the trustee's actions for the period in which the trust remained revocable [citations], and thus also lack standing to seek such relief for the period prior to [William's] death."

The Court of Appeal also believed this action alleged a breach of Timothy's fiduciary duty solely towards the beneficiaries rather than toward William. "In this case," the Court of Appeal said, plaintiffs "were not purporting to pursue [William's] claims, or to seek redress for alleged wrongs done to him. Instead, they were seeking to vindicate their own distinct interests, by claiming [Timothy] had breached duties allegedly owed *to them* during the period prior to [William's] death. We hold merely that [Timothy] owed them no such duties, and thus [plaintiffs] lacked standing to assert *those claims*. We express no opinion on the merit of any theoretical claims that might have been asserted on [William's] behalf. None were."

The Court of Appeal reversed the trial court's judgment "without prejudice to [plaintiffs'] right to seek a new accounting pertaining solely to the period after [William] Giraldin's death . . . ."

We granted plaintiffs' petition for review limited to the following question: "When the settlor of a revocable inter vivos trust appoints, during his lifetime, someone other than himself to act as trustee, once the settlor dies and the trust becomes irrevocable, do the remainder beneficiaries have standing to sue the trustee for breaches of fiduciary duty committed during the period of revocability?"

6

## II. DISCUSSION

William created the trust during his lifetime, and he reserved the right to revoke it.  Property transferred into a revocable inter vivos trust is considered the property of the settlor for the settlor's lifetime.  Accordingly, the beneficiaries' interest in that property is " 'merely potential' and can 'evaporate in a moment at the whim of the [settlor].' "  (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1319, quoting *Johnson v. Kotyck* (1999) 76 Cal.App.4th 83, 88.)  Thus, so long as William was alive, he had the power to divest the beneficiaries of any interest in the trust.  (See generally *Steinhart v. County of Los Angeles*, *supra*, at pp. 1319-1320.)

Consistent with these principles, Probate Code section 15800 provides: "Except to the extent that the trust instrument otherwise provides . . . , during the time that a trust is revocable and the person holding the power to revoke the trust is competent:

"(a)  The person holding the power to revoke, and not the beneficiary, has the rights afforded beneficiaries under this division.

"(b)  *The duties of the trustee are owed to the person holding the power to revoke*."  (Italics added.)[5]

The italicized language from section 15800, subdivision (b), makes clear that so long as the settlor is alive, the trustee owes a duty solely to the settlor and not to the beneficiaries.  The Court of Appeal viewed this lawsuit as alleging only that Timothy violated a fiduciary duty towards the beneficiaries during William's lifetime.  Had this been the case, the action could simply have been dismissed on the basis that no such duty exists.  There would be no need to raise any standing

---

[5]      All further statutory references are to the Probate Code unless otherwise indicated.

7

question.  But this case does not simply involve an alleged breach of Timothy's duty towards the beneficiaries.  Although some of the trial court's order underlying this appeal was ambiguous regarding whether the court had found a violation of a duty towards the beneficiaries or towards William, a substantial thrust of this lawsuit and the trial court's order is that Timothy violated his fiduciary duty towards William during William's lifetime.  To the extent, if any, that the trial court based its order on a breach of duty towards the beneficiaries during William's lifetime, we agree the court erred.  No such duty exists.  But to the extent the court based its order on a violation of Timothy's duty towards William during his lifetime, we must decide whether the beneficiaries have standing after the settlor's death to sue the trustee for breach of *that* duty.

The Law Revision Commission comment to section 15800 explains that the "section has the effect of postponing the enjoyment of rights of beneficiaries of revocable trusts until the death or incompetence of the settlor or other person holding the power to revoke the trust. . . .  Section 15800 thus recognizes that the holder of a power of revocation is in control of the trust and should have the right to enforce the trust. . . .  A corollary principle is that the holder of the power of revocation may direct the actions of the trustee. . . .  Under this section, the duty to inform and account to beneficiaries is owed to the person holding the power to revoke during the time that the trust is presently revocable."  (Cal. Law Revision Com. com., 54 West's Ann. Prob. Code (2011 ed.) foll. § 15800, pp. 644-645.)

Similarly, section 15801, subdivision (a), provides that when a beneficiary's consent may or must be given, "during the time that a trust is revocable and the person holding the power to revoke the trust is competent, the person holding the power to revoke, and not the beneficiary, has the power to consent or withhold consent."  The Law Revision Commission comment to this section explains that under its rule, "the consent of the person holding the power to

8

revoke, rather than the beneficiaries, excuses the trustee from liability as provided in Section 16460(a) (limitations on proceedings against trustee)." (Cal. Law Revision Com. com., 54 West's Ann. Prob. Code, *supra*, foll. § 15801, p. 646.)

Section 15802 provides that "during the time that a trust is revocable and the person holding the power to revoke the trust is competent, a notice that is to be given to a beneficiary shall be given to the person holding the power to revoke and not to the beneficiary." The Law Revision Commission comment to this section explains that it "recognizes that notice to the beneficiary of a revocable trust would be an idle act in the case of a revocable trust since the beneficiary is powerless to act." (Cal. Law Revision Com. com., 54 West's Ann. Prob. Code, *supra*, foll. § 15802, p. 646.)

These provisions mean that during William's lifetime, and as long as he was competent, the trust beneficiaries were powerless to act regarding the trust. A report of the California Law Revision Commission also makes this clear. "[T]he proposed law makes clear that the beneficiaries of a revocable living trust do not have the right to petition the court concerning the internal affairs of the trust until such time as the settlor, or other person holding the power to revoke, is unable to exercise a power of revocation, whether due to incompetence or death." (Recommendation Proposing the Trust Law (Dec. 1985) 18 Cal. Law Rev. Com. Rep. (1986) pp. 584-585; see 13 Witkin, Summary of Cal. Law (10th ed. 2005) Trusts, § 145, p. 710 [quoting this language].)

The question we must decide is whether the plaintiffs had standing, after William's death, to allege Timothy's breach of fiduciary duty towards William. The Probate Code does not address this question directly. That is, no section expressly states that the beneficiaries of a revocable trust either have or do not have this standing. But the code, as a whole, implies that after the settlor has died, the beneficiaries of a revocable trust may challenge the trustee's breach of the

9

fiduciary duty owed to the settlor to the extent that breach harmed the beneficiaries' interests. As the Law Revision Commission explained, section 15800 merely *postponed* the beneficiaries' enjoyment of their rights until after the settlor's death. (Cal. Law Revision Com. com., 54 West's Ann. Prob. Code, *supra*, foll. § 15800, p. 644.)

As a general matter, the Probate Code affords beneficiaries broad remedies for breach of trust. Section 16420, subdivision (a), provides that "[i]f a trustee commits a breach of trust, or threatens to commit a breach of trust, *a beneficiary . . . may commence a proceeding* for any of the following purposes that is appropriate . . . ." (Italics added.) These purposes include "[t]o compel the trustee to redress a breach of trust by payment of money or otherwise." (*Id*., subd (a)(3).) The Law Revision Commission comment to this section states that the "reference to payment of money in paragraph (3) is comprehensive and includes liability that might be characterized as damages, restitution, *or surcharge*." (Cal. Law Revision Com. com., 54A Pt.1, West's Ann. Prob. Code (2011 ed.) foll. § 16420, p. 256, italics added.) Subdivision (b) of that section — which states that the "provision of remedies for breach of trust in subdivision (a) does not prevent resort to any other appropriate remedy provided by statute or the common law" — makes clear that the remedies the section affords beneficiaries are indeed broad.

Section 16462, subdivision (a), provides that "a trustee of a revocable trust is not liable *to a beneficiary* for any act performed or omitted pursuant to written directions from the person holding the power to revoke . . . ." (Italics added.) This provision is consistent with section 15800, which provides that the trustee's duties are owed to "the person holding the power to revoke," who in this case is the settlor. If the trustee's duty is to the settlor, and the trustee acts pursuant to the settlor's directions, the trustee has violated no duty. But section 16462, including the italicized language, "to a beneficiary," also implies that if the trustee does *not*

10

act pursuant to the settlor's directions, the trustee *may* be liable to the beneficiaries. This implication would make no sense, and section 16462 would be meaningless, if the beneficiaries have no standing, ever, to bring an action challenging the trustee's actions while the settlor was still alive. We see no textual or other basis to support the dissent's argument section 16462 only governs actions taken after the settlor has died. (Dis. opn., *post*, at pp. 6-7.)

Section 16069 (formerly part of section 16064) provides that the trustee need not account to the beneficiary "[i]n the case of a beneficiary of a revocable trust, as provided in Section 15800, for the period when the trust may be revoked." Timothy argues this means that he need not account to the beneficiaries ever for his actions while the trust could be revoked. The statutory language is somewhat ambiguous and may, indeed, be read as Timothy argues. But, as the cross-reference to section 15800 indicates, section 16069 must be read in context. Section 15800 provides that *during* the time the trust is revocable, the settlor has the rights afforded beneficiaries. We must read section 16069 to be consistent with section 15800. We do not read section 16069 to mean that the trustee never has to provide such an accounting, even after the trust becomes irrevocable, i.e., after the settlor's death.

Section 17200 provides further support for this conclusion. Subdivision (a) of that section states: "Except as provided in Section 15800, a trustee or beneficiary of a trust may petition the court under this chapter concerning the internal affairs of the trust or to determine the existence of the trust." Other than as affected by the reference to section 15800, section 17200 does not distinguish between inter vivos trusts and other trusts. (See *Conservatorship of Irvine* (1995) 40 Cal.App.4th 1334, 1342.) Section 24, subdivision (c), states that "beneficiary," "[a]s it relates to a trust, means a person who has any present or future interest, vested *or contingent*." (Italics added.) Thus, a contingent beneficiary may

11

petition the court subject only to the limitations provided in section 15800. But the latter provision merely states that "during the time" the trust is revocable, the settlor has the rights of a beneficiary, and the trustee's duties are to the settlor, not the beneficiary. Nothing in section 15800 limits the ability of beneficiaries to petition the court *after* the trust becomes irrevocable.

Other than the Court of Appeal in this case, no California court has held the beneficiaries have no standing in this situation. Indeed, we are aware of no statute, judicial decision, or other authority, from this or any other state, denying such standing. The only California case on point has found standing. (*Evangelho v. Presoto* (1998) 67 Cal.App.4th 615 (*Evangelho*).) In that case, the beneficiaries of a revocable trust sought, after the settlor's death, an accounting from the trustee for the period during which the trust was revocable. The trustee argued that "an accounting should not be ordered for the period when decedent was alive and the trust was revocable by decedent . . . ." (*Id*. at p. 617.) The Court of Appeal disagreed.

The *Evangelho* court noted that while the trustor (i.e., settlor) was alive, the trust was revocable and subject to section 15800. (*Evangelho*, *supra*, 67 Cal.App.4th at p. 623.) It then explained: "The effect of this section [15800], according to the Law Revision Commission comment on this code section, is to postpone the enjoyment of the rights of the beneficiaries of revocable trusts until the death or incompetence of the settlor or the person who can revoke the trust. (Cal. Law Revision Com. com., 54 West's Ann. Prob. Code, *supra*, foll. § 15800, p. 644.) During the time the trust may be revoked, the trustee is not required to account to a beneficiary. ([Former] § 16064 [, subd. (d)] [provision renumbered § 16069 by Stats. 2010, ch. 621, § 9].) [¶] The clear import of the legislative intent of section 15800 and [former] section 16064 was to postpone the enjoyment of rights under the trust law by contingent beneficiaries while the settlor could

12

revoke or modify the trust. During the time the person holding the power to revoke is competent or alive, a trustee has no duty to account to contingent beneficiaries for the period when the trust may be revoked. When the person holding the power to revoke dies, the rights of the contingent beneficiaries are no longer contingent. Those rights, which were postponed while the holder of the power to revoke was alive, mature into present and enforceable rights under division 9, the trust law.

"Considered as a whole, the various Probate Code sections impose a duty on the trustee to protect the interests of the persons who are entitled to the proceeds of the trust. One facet of the duty is that the protected persons can compel an accounting. In the case of a revocable trust, two categories of person are protected. While the trust is revocable, the protected person is the settlor. However once the trust becomes irrevocable, such as by the death of the settlor, the beneficiaries become the protected persons. The Law Revision Commission comments explicitly speak about 'postponing the enjoyment of rights of beneficiaries of revocable trusts until the death or incompetence of the settlor or other person holding the power to revoke the trust.' (Cal. Law Revision Com. com., 54 West's Ann. Prob. Code, *supra*, foll. § 15800, p. 644.) [¶] Accordingly, the actual words of the code sections and Law Revision Commission reveal the will of the Legislature to be that only decedent as settlor could compel an accounting while she was alive and competent. But once decedent died, the right to compel the accounting set out in the code sections passed to the . . . beneficiaries." (*Evangelho*, *supra*, 67 Cal.App.4th at pp. 623-624, fn. omitted.)

The Court of Appeal here found *Evangelho*, *supra*, 67 Cal.App.4th 615, "unpersuasive, and decline[d] to follow it." It first "note[d] the *Evangelho* court did not have the benefit of the Supreme Court's opinion in *Steinhart* [*v. County of Los Angeles*, *supra*, 47 Cal.4th 1298], with its clear explanation of the special

13

nature of a revocable trust, to aid in its interpretation of Probate Code section 15800." But what we said in *Steinhart* about revocable trusts was merely background regarding the legal issue before us, which was a tax question. We said nothing about revocable trusts that was not already well established.

The Court of Appeal also stressed that the trustee's duties were owed to the settlor while he was still alive. It then stated: "And if the trustee's duties are not owed to the beneficiaries at the time of the acts in question, the death of the settlor cannot make them *retroactively* owed to the beneficiaries." This statement is correct, but it does not address the question of whether the beneficiaries have standing to assert a breach of the duty towards the settlor after the settlor has died and can no longer do so personally.

The court provided a rather colorful hypothetical to illustrate its argument: "For example, if the settlor of a revocable trust learned he had a terminal disease, and was going to die within six months, he might decide that his last wish was to take his mistress on a deluxe, six-month cruise around the world — dissipating most of the assets held in his trust. The trustee, whose duties are owed to the settlor at that point, would have no basis to deny that last wish. However, if the trustee's duties were deemed to be retroactively owed to the trust beneficiaries — say, the settlor's widow and children — as soon as the settlor breathes his last breath on a beach in Bali, the trustee would find himself *liable* for having failed to sufficiently preserve *their interests* in the trust corpus prior to the settlor's death. In other words, the trustee's act, which was not a breach of any duty owed by the trustee when he committed it, would suddenly be transformed into a breach of a different duty that only came into existence when the settlor died. That is not — and cannot be — the law."

The court's argument, applied to its hypothetical facts, is correct. In that hypothetical, the trustee would have breached no duty, so would have incurred no

14

liability.  But that is not the issue we are deciding.  Let us change the hypothetical somewhat.  Let us assume the *trustee* himself, unbeknownst to and against the wishes of the settlor (who wishes to leave behind a large trust for his beneficiaries), goes on the six-month cruise around the world with trust funds, dissipating most of the trust assets in the process.  The acts do not come to light until the settlor has died and the beneficiaries discover the trust is devoid of assets.  In that situation, the trustee *would* have violated his duty to the settlor, much to the beneficiaries' harm, and, as section 16462 implies, *would* be liable to the beneficiaries.  The Court of Appeal is correct that the trustee owes no duty to the beneficiaries while the settlor is alive and competent, and this lack of a duty does not retroactively change after the settlor dies.  But after the settlor has died and can no longer protect his own interests, the beneficiaries have standing to claim a violation of the trustee's duty *to the settlor* to the extent that violation harmed the beneficiaries' interests.  A trustee, like our hypothetical one, cannot loot a revocable trust against the settlor's wishes without the beneficiaries' having recourse after the settlor has died.

The case of *Johnson v. Kotyck*, *supra*, 76 Cal.App.4th 83, illustrates the difference between the beneficiaries' standing before and after the settlor's death.  In that case, the settlor, although still alive, was under the care and custody of a court-appointed conservator.  The question was whether, in that situation, the beneficiary of a revocable trust was entitled to receive a trust accounting.  The Court of Appeal concluded the beneficiary was not so entitled.  Its analysis is instructive.  The beneficiary had relied "on section 15800, which postpones the rights of trust beneficiaries 'during the time that a trust is revocable and the person holding the power to revoke the trust is competent.' " (*Id*. at p. 88.)  The court rejected this reliance.  "[T]his provision does *not* mean that a trust automatically becomes irrevocable when the trustor becomes a conservatee.  The Law Revision

15

Commission comment to section 15800 explains: 'This section has the effect of postponing the enjoyment of rights of beneficiaries or revocable trusts until the death or incompetence of the settlor *or other person holding the power to revoke the trust*.' (Cal. Law Revision Com. com., reprinted at 54 West's Ann. Prob. Code (1991 ed.) foll. § 15800, p. 644, italics added [by the *Johnson* court].)" (*Ibid*.) The court explained that the conservator, working with the court, was a person holding the power to revoke the trust. (*Ibid*.) It concluded, accordingly, "that section 15800 does not give a beneficiary . . . any right to a trust accounting *so long as* a conservator retains authority . . . to have the trust revoked and to abrogate [the beneficiary's] interest in the trust proceeds." (*Ibid*., italics added.)

But the *Johnson* court went on to explain that the conservator might be liable to the remainder beneficiary later, after the trust becomes irrevocable, for any malfeasance. It explained that "the conservator ignores misappropriations of the conservatee's property at its own peril." (*Johnson v. Kotyck*, *supra*, 76 Cal.App.4th at p. 89.) Accordingly, the court merely concluded that the beneficiary "cannot be accorded all the rights of a vested beneficiary *before* the death of the trustor [i.e., the settlor]." (*Id*. at p. 90, italics added.) This discussion suggests that after the settlor dies, the beneficiary would have standing to complain of the conservator's actions taken before the settlor's death.

Other legal sources support finding standing after the settlor's death. Although California's law of trusts is statutory, it also draws on the common law. "Except to the extent that the common law rules governing trusts are modified by statute, the common law as to trusts is the law of this state." (§ 15002.) The Law Revision Commission comment to this section states that it refers "to the contemporary and evolving rules of decision developed by the courts in exercise of their power to adapt the law to new situations and to changing conditions."

16

(Cal. Law Revision Com. com., 54 West's Ann. Prob. Code, *supra*, foll. § 15002, pp. 484-485.)

Consistently with section 15002, California courts have considered the Restatement of Trusts in interpreting California trust law. (See *Esslinger v. Cummins* (2006) 144 Cal.App.4th 517, 528 [interpreting § 17200 in a way that made it consistent with the Rest.2d Trusts].) The Restatement Third of Trusts, like the Probate Code, does not expressly address the question here, but it supports the conclusion that beneficiaries do have standing after the settlor's death to sue for a trustee's breach of the duty owed to the settlor. Section 74 of that Restatement provides that while the trust is revocable, the trustee has a duty to do what the settlor directs (subd. (1)(a)), and that "[t]he rights of the beneficiaries are exercisable by and subject to the control of the settlor" (subd. (1)(b)). This section, like the similar section 15800, is inconclusive on the question before us. But the comments to this section are instructive. The comment to subdivision (1)(a), states: "A trustee is not liable to the beneficiaries for a loss that results from compliance with a settlor's direction in accordance with the terms of that direction." (Rest.3d Trusts, § 74, com. b, p. 29.) Later that comment adds, "As a practical matter, however, in the event of a surcharge action, the trustee does run a risk in relying on unwritten evidence to support a defense based on settlor direction or authorization." (*Id*. com. c, p. 30.) These comments imply that a trustee *may* be liable to the beneficiaries in at least some circumstances, which in turn implies that beneficiaries have standing to assert that liability.

One well-known treatise on trust law does address this question directly. "Consistent with the rule that the duties of a trustee of a revocable trust are owed exclusively to the settlor, at least while the settlor has capacity, the rights of non-settlor beneficiaries of a revocable trust generally are subject to the control of the settlor. Thus, as a general rule, the trustee cannot be held to account by other

17

beneficiaries for its administration of a revocable trust during the settlor's lifetime. After the settlor's death, of course, the trustee is accountable to the trust's other beneficiaries for its administration of the trust after the settlor's death. Further, *many courts have allowed other beneficiaries to pursue breach of duty claims after the settlor's death, related to the administration of the trust during the settlor's lifetime, when, for example, there are allegations that the trustee breached its duty during the settlor's lifetime* and that the settlor had lost capacity, was under undue influence, or did not approve or ratify the trustee's conduct." (Bogert, The Law of Trusts and Trustees (3d ed. 2010) § 964, pp. 103-105, fns. omitted, italics added; see *Estate of Bowles* (2008) 169 Cal.App.4th 684, 692-694 [considering this treatise in interpreting California trust law].) Among the cases the treatise cites to support the italicized language is *Evangelho*, *supra*, 67 Cal.App.4th 615. (Bogert, *supra*, § 964, p. 105, fn. 35.)

Bogert also cites some Florida cases. (Bogert, *supra*, § 964, p. 106, fn. 35.) In *Brundage v. Bank of America* (Fla.Dist.Ct.App. 2008) 996 So.2d 877, 882, the court recognized that (as in California) the trustee owes no duty to the beneficiaries of a revocable trust. "However," the court held, "once the interest of the contingent beneficiary vests upon the death of the settlor, the beneficiary may sue for breach of a duty that the trustee owed to the settlor/beneficiary which was breached during the lifetime of the settlor and subsequently affects the interest of the vested beneficiary." (*Ibid.*) Another Florida court reached a similar conclusion while applying New York law. (*Siegel v. Novak* (Fla.Dist.Ct.App. 2006) 920 So.2d 89, 95.) It explained that denying standing would be "contrary to our sense of justice — a trustee should not be able to violate its fiduciary duty . . . and yet escape responsibility because the settlor did not discover the transgressions during her lifetime. With an interest in the corpus of the trust after the death of their mother, the [beneficiaries] have standing to challenge the

18

disbursements . . . . Without this remedy, wrongdoing concealed from a settlor during her lifetime would be rewarded." (*Id*. at p. 96, fn. omitted.)

The Uniform Trust Code is also instructive. California has not adopted the Uniform Trust Code. But it helps to illuminate the common law of trusts, which, as noted, is also the law of California except as modified by statute. (§ 15002.) One section of that code provides: "While a trust is revocable [and the settlor has capacity to revoke the trust], rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor." (U. Trust Code (2000) § 603, subd. (a).) In substance, this provision is similar to section 15800. Like section 15800, it does not specifically address the question before us. But the accompanying comment does address the question. It expressly states what the comment to section 15800 implies: "Following the death or incapacity of the settlor, the beneficiaries *would have a right to maintain an action against a trustee for breach of trust*. However, with respect to actions occurring prior to the settlor's death or incapacity, an action by the beneficiaries could be barred by the settlor's consent or by other events such as approval of the action by a successor trustee." (U. Trust Code, com. to § 603, pp. 553-554, italics added.)

We are aware of no common law source denying standing to beneficiaries in the situation here. The cited sources strongly indicate that the common law rule is that beneficiaries do have standing after the settlor's death. Because no California statute has modified that rule, we find these sources persuasive.

Timothy argues that other remedies exist for the trustee's breach of the fiduciary duty owed to the settlor. He suggests there might be a claim for elder abuse under Welfare and Institutions Code section 15600 et seq., appointment of a conservator for the settlor while he or she is alive, or a suit by the personal representative of the deceased settlor under Code of Civil Procedure section 377.30. Recognizing that the deceased's personal representative might be, and

19

often is, also the trustee — indeed, Timothy's attorney acknowledged at oral argument that is the situation here — and that people are unlikely to sue themselves, he argues that if the personal representative and trustee are the same person, the beneficiaries might petition the probate court to appoint an independent personal representative who could then investigate and possibly pursue the beneficiaries' claims.

A claim for elder abuse under Welfare and Institutions Code section 15600 et seq. might be a possible remedy under appropriate circumstances. But nothing in the Welfare and Institutions Code suggests that such a claim replaces all other possible actions.

Code of Civil Procedure section 377.30 provides as relevant: "A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest, . . . and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." This provision certainly gives the personal representative standing to pursue an action like the one here. But that statute is a general grant of standing. Contrary to Timothy's and the dissent's arguments, nothing in this statute suggests its grant of standing is exclusive. The dissent asserts that this statute provides that "only" (dis. opn., *post*, at p. 4) the personal representative may bring an action like this one, but the word "only" is not found in that section.

The Probate Code provisions discussed above concern specifically trusts and, as explained, they recognize a broad and nonexclusive list of remedies for beneficiaries to use to seek redress for breach of trust. Those provisions make clear that Code of Civil Procedure section 377.30's grant of standing is not exclusive when it comes to trusts. They expressly give these beneficiaries standing to bring some actions at least. In addition to sections 16420 and 17200,

20

discussed above, section 850, subdivision (a), provides: "The following persons may file a petition requesting that the court make an order under this part: [¶] . . . [¶] (3) The trustee or *any interested person* in any of the following cases: [¶] . . . [¶] (B) Where the trustee has a claim to real or personal property, title to or possession of which is held by another." (Italics added.) The term, "interested person," includes a beneficiary. (§ 48, subd. (a)(1).) Thus, Code of Civil Procedure section 377.30 is not the exclusive designation of standing when it comes to claims for breach of a trustee's duty to a deceased settlor. We must look to the relevant Probate Code sections to determine whether the beneficiaries have standing to bring such an action. Although no statute precisely answers this question, we conclude the Probate Code does give beneficiaries this standing for the reasons explained above. Code of Civil Procedure section 377.30 does not preclude this standing.

To be sure, "[a]s a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf." (*Estate of Bowles*, *supra*, 169 Cal.App.4th at p. 691.) But this general rule does not extend to an action alleging the trustee itself breached a duty. "[A] trust beneficiary can bring a proceeding against a trustee for breach of trust." (*Ibid*., citing §§ 16420 and 17200; accord, *King v. Johnston* (2009) 178 Cal.App.4th 1488, 1500.)

Thus, the existence of other possible remedies under other codes does not mean the beneficiaries lack standing under the Probate Code simply to assert, after the settlor's death, a breach of the duty the trustee owed the settlor to the extent that breach harmed the beneficiaries. Contrary to Timothy's and the dissent's arguments (dis. opn., *post*, at p. 4), beneficiaries do not have to go through a two-step process — (1) move either to appoint a personal representative, if one does not already exist, or to have the existing personal representative removed and

21

replaced by a new one, and then (2) have the new personal representative bring the action. They may bring the action directly, themselves.

Timothy and the dissent also argue that the actual trust gave him great discretion to act, and that this action conflicts with the settlor's intent. (Dis. opn., *post*, at pp. 4-5.) But this argument just goes to whether there *was* a breach of a duty towards the settlor in this case, not to whether the beneficiaries have standing to assert a breach if there was one. We express no view regarding the merits of this particular case. We merely hold that, after the settlor's death, the beneficiaries have standing to assert a breach of the fiduciary duty the trustee owed to the settlor to the extent that breach harmed the beneficiaries.

Finally, Timothy argues that even if vested beneficiaries have such standing, the actual plaintiffs' rights have still not vested. As long as Mary still lives, she is entitled to the benefits of the trust. Only after she dies will the remaining beneficiaries' rights vest. Thus, Timothy argues, only Mary may now assert a breach of his duty towards William; the other beneficiaries will have to await her death to bring this action. We disagree. Section 17200 permits a "beneficiary" to petition the court concerning the trust's internal affairs except as section 15800 provides. As we have explained, section 15800 merely postpones the beneficiaries' rights until the settlor's death. Section 24, subdivision (c), defines "beneficiary" to include a contingent beneficiary. The children need not wait for Mary's death to bring this action. Timothy argued in both the trial court and the Court of Appeal that the beneficiaries brought this action *too late*, that is, that it is time-barred by the statute of limitations or doctrine of laches. We express no opinion on this point, but this action is not *premature* simply because Mary is still alive.

Because the Court of Appeal concluded that plaintiffs have no standing to complain of Timothy's actions before William died, it did not decide any of the other issues in the case. It should do so on remand.

### III. CONCLUSION

We reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with our opinion.

**CHIN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**BAXTER, J.**
**CORRIGAN, J.**
**LIU, J.**

**DISSENTING OPINION BY KENNARD, J.**


As a means of transferring property at death, a person (the settlor) may place assets into a trust for the benefit of another (the beneficiary), reserve the right to withdraw the trust assets at any time, and appoint a third party (the trustee) to administer the trust. Such a trust is generally known as a "revocable trust." (Black's Law Dict. (9th ed. 2009) pp. 1647, 1654.) During the settlor's lifetime, the trustee owes the settlor a fiduciary duty to properly administer the trust assets. (Bogert, The Law of Trusts and Trustees (3d ed. 2010) § 964, pp. 97-98.) For a breach of that duty, the settlor can sue the trustee. After the settlor's death, can the beneficiaries sue the trustee on the deceased settlor's behalf? According to the majority, they can. I disagree. In my view, only the estate's personal representative (or, if none exists, the decedent's successor in interest) can sue on the deceased settlor's behalf. Therefore, unlike the majority, I would affirm the judgment of the Court of Appeal, which held that the trust beneficiaries here lacked standing to sue the trustee.

**I**

In 2002, William Giraldin created a revocable trust, designating his son Timothy as trustee. After William's death, the trust benefits were to go to his wife Mary, if still alive, and after her death William's nine children were to share equally in the remainder.

1

As set forth in the trust document, trustee Timothy was to distribute trust assets as directed by settlor William unless William was declared mentally incompetent. In the event of William's incompetency, Timothy was to provide William with trust assets sufficient to support William's "accustomed manner of living," without consideration of "the rights of the remainder beneficiaries." The trust document also described the trustee's "discretionary powers" as "absolute," explaining: "This means that the Trustee can act arbitrarily, so long as he . . . does not act in bad faith." The settlor expressly "waive[d] the requirement that the Trustee's conduct" be that of "a reasonable, prudent person."

Between February 2002 and May 2003, at the direction of settlor William, Timothy invested trust assets of more than $4 million in SafeTzone Technologies Corporation (SafeTzone), a startup company founded by William's son Patrick and partly owned by Patrick's twin brother, Timothy. Timothy also loaned Patrick $155,000 in trust assets. The startup was not a success; at William's death in 2005, the trust's original investment in SafeTzone was worth only $100,000.

The year after settlor William's death, four of his children (plaintiffs) sued trustee Timothy for a breach of fiduciary duty. They alleged that Timothy had squandered William's life savings on himself and twin brother Patrick, thereby reducing plaintiffs' potential trust benefits. According to plaintiffs, at the time of the trust's investments in SafeTzone, settlor William "was in declining health, had been suffering from Parkinson's Disease for many years and was unable to resist the influence of [trustee] Timothy." Plaintiffs sought court orders removing Timothy as trustee, compelling him to account for his acts as trustee, and surcharging him for the loss in the trust's value during the period before William's death. William's wife Mary (the primary beneficiary of the trust) and William's other children did not join in the lawsuit.

At the 2008 trial, the court ruled in plaintiff beneficiaries' favor. It found that, by investing more than $4 million of trust assets in SafeTzone, trustee Timothy breached his duty to avoid conflicts of interest, to deal impartially with the trust's beneficiaries, to preserve trust property, and to diversify trust investments. At the time of the investment in SafeTzone, the court said, settlor William lacked sufficient mental competence to analyze the benefits and risks of an investment in SafeTzone or to authorize Timothy to make such an investment. The court ordered that Timothy be removed as trustee and that he be surcharged $4,376,044 for the SafeTzone investment and $625,619 for other disbursements. Patrick was ordered to return $155,000 in trust assets that Timothy had loaned to him.

Trustee Timothy appealed. In reversing the trial court's judgment, the Court of Appeal held that plaintiff beneficiaries lacked standing to sue Timothy.

## II

Probate Code section 15800 states: "Except to the extent that the trust instrument otherwise provides . . . , during the time that a trust is revocable . . . : [¶] . . . [¶] (b) The duties of the trustee are owed to the person holding the power to revoke." Thus, as the majority acknowledges, here trustee Timothy owed no duty to plaintiff beneficiaries with respect to the investment of trust assets in SafeTzone, because settlor William, who held the power to revoke the trust, was still alive when the investment was made. (Maj. opn., *ante*, at p. 7.)[1] But the statute in question is silent on whether, after the trust settlor's death, the trust

---

[1]    The Court of Appeal stated that plaintiff beneficiaries sued trustee Timothy for breaching a fiduciary duty Timothy allegedly owed to plaintiffs as beneficiaries, not for breaching the fiduciary duty owed to settlor William. But, as the majority notes, plaintiffs also alleged, and the trial court found, that Timothy had breached the fiduciary duty owed to William. (Maj. opn., *ante*, at p. 8.)

3

beneficiaries can sue the trustee for breaching the fiduciary duty owed to the settlor during the settlor's lifetime.  The majority allows such an action.  I would not.

Pertinent here is this language in Code of Civil Procedure section 377.30: "A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest . . . and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest."  Any wrongful refusal to bring such an action can be challenged by the beneficiary through a motion, in probate court, to remove the personal representative (Prob. Code, § 8500) on the ground that "[r]emoval is . . . necessary for protection of the estate or interested persons" (Prob. Code, § 8502, subd. (d)).  Here, plaintiff beneficiaries do not allege that they are the personal representatives of deceased settlor William, or that no personal representative exists and they are William's successors in interest.[2]

Code of Civil Procedure section 377.30's provision that only the decedent's personal representative (if any) may sue on the decedent's behalf would avoid the conflict of interest inherent in the majority's approach of also allowing the beneficiaries to sue:  The suing beneficiaries generally have a personal interest in maximizing their share of the inheritance.  That interest may be at odds with what the decedent had in mind, as this case illustrates.  Under the trust document, trustee Timothy had "absolute" discretionary power in administering the trust and the settlor "waive[d] the requirement that" Timothy's conduct as trustee be that of "a reasonable, prudent person," language reflecting the settlor's intent to protect

_____

[2]     The record does not show whether a personal representative exists here.  At oral argument, counsel for defendant trustee Timothy said that Timothy is the decedent settlor's personal representative.

4

Timothy from lawsuits related to Timothy's performance of his duties as trustee. The trust beneficiaries' personal interest in increasing their inheritance through a successful lawsuit against Timothy conflicts with the settlor's intent; thus, they should not be permitted to represent the deceased settlor's interests by filing an action on his behalf.

Applying here the above-discussed "personal representative" provision of Code of Civil Procedure section 377.30 would avoid litigation strategy problems likely to ensue from the majority's holding that both the personal representative and the beneficiaries may sue. An example: A personal representative and several beneficiaries of a revocable trust sue the trustee on behalf of the deceased settlor, and the defendant trustee offers to settle. Some of the plaintiffs want to accept the offer; others do not. What to do? Which of the plaintiffs, all of whom purport to represent the deceased settlor's interests, get to decide whether to accept the offer? This quandary can be avoided by applying section 377.30. Because this statute allows only the decedent's personal representative (or if none, the decedent's successors in interest) to sue on the decedent's behalf, in the example just given the decision whether to accept the settlement offer is entrusted to the personal representative, not anyone else.

The majority acknowledges the absence of any statutory provision conferring on beneficiaries of a revocable trust the standing to sue the trustee for a breach of the statutory duty owed to the settlor during the settlor's lifetime. (Maj. opn., *ante*, at p. 9.) But, according to the majority, permitting such a lawsuit is implicit from the Probate Code "as a whole." (*Ibid.*) In support, the majority cites Probate Code sections 16069, 16420, 16462, and 17200, which I discuss below.

Probate Code section 16069 states that the trustee of a revocable trust "is not required to account to the . . . [¶] . . . beneficiary of a revocable trust, as provided in Section 15800, for the period when the trust may be revoked." The

5

majority states: "[A]s the cross-reference to section 15800 indicates, section 16069 must be read in context. Section 15800 provides that *during* the time the trust is revocable, the settlor has the rights afforded beneficiaries. . . . We do not read section 16069 to mean that the trustee never has to provide such an accounting, even after the trust becomes irrevocable, i.e., after the settlor's death." (Maj. opn., *ante*, at p. 11.) But whether or not section 16069 permits beneficiaries to obtain an *accounting* from the trustee after the settlor's death, nothing in this statute implies that beneficiaries can sue the trustee on the deceased settlor's behalf for a breach of the fiduciary duty the trustee owed the settlor during the settlor's lifetime.

As to Probate Code section 16420, it gives beneficiaries a broad range of remedies when "a trustee commits a *breach of trust*, or threatens to commit a breach of trust . . . ." (Prob. Code, § 16420, subd. (a), italics added.) The Probate Code defines a "breach of trust" as "[a] violation by the trustee of any duty that the trustee owes the *beneficiary*." (Prob. Code, § 16400, italics added.) The question here, however, is not whether plaintiff beneficiaries can sue defendant trustee Timothy for breaching a duty he owed to the beneficiaries. Rather, the question is whether the beneficiaries can sue the trustee for breaching a duty owed to the trust's settlor during the settlor's lifetime, a point on which section 16420 is silent, thus providing no support for the majority's position.

With respect to Probate Code section 16462's subdivision (a), the majority relies on that provision's language that "a trustee of a revocable trust is not liable to a beneficiary for any act performed or omitted pursuant to written directions from the person holding the power to revoke . . . ." This statutory language, the majority states, "implies that if the trustee does *not* act pursuant to the settlor's directions, the trustee *may* be liable to the beneficiaries." (Maj. opn., *ante*, at

6

pp. 10-11.) The majority's reliance on this statutory language is misplaced, as I explain below.

The language in Probate Code section 16462's subdivision (a) quoted by the majority describes a defense that a trustee may assert to avoid being held "liable to a beneficiary" (*ibid.*) of a revocable trust. But because the trustee of a revocable trust owes no duty to the beneficiary while the settlor is alive (Prob. Code, § 15800), a trustee is not liable to a beneficiary for actions taken during the settlor's lifetime. Thus, the statutory language relied on by the majority (see preceding paragraph) must refer to a lawsuit by a beneficiary of a revocable trust based on *the trustee's conduct after the settlor's death*, when the trustee owes the trust beneficiary a fiduciary duty (see Prob. Code, § 16002, subd. (a)) and can be held liable to the beneficiary for breaching that duty. In such a lawsuit challenging certain actions taken by the trustee after the settlor's death, Probate Code section 16462's subdivision (a) absolves the trustee from liability to the beneficiary if the trustee acted "pursuant to written directions" (*ibid*.) from the settlor. Notwithstanding the majority's insistence to the contrary, that statutory provision does not imply that a beneficiary may sue the trustee on the settlor's behalf based on the trustee's conduct *before* the settlor's death.

Finally, as to Probate Code section 17200's subdivision (a), the majority relies on language stating that "[e]xcept as provided in Section 15800, a . . . beneficiary of a trust may petition the court . . . concerning the internal affairs of the trust." The majority reasons: "[Under this provision,] a contingent beneficiary may petition the court subject only to the limitations provided in section 15800. But the latter provision merely states that 'during the time' the trust is revocable, the settlor has the rights of a beneficiary, and the trustee's duties are to the settlor, not the beneficiary. Nothing in section 15800 limits the ability of beneficiaries to petition the court *after* the trust becomes irrevocable." (Maj. opn., *ante*, at pp. 11-

7

12.)  Maybe so.  Neither Probate Code section 17200's subdivision (a) nor section 15800, however, contains language implying that a beneficiary of a revocable trust may sue the trustee, on the deceased settlor's behalf, for breaching the fiduciary duty the trustee owed the settlor during the settlor's lifetime.

For the reasons set forth above, I would affirm the judgment of the Court of Appeal.


                                                    KENNARD, J.

I CONCUR:

WERDEGAR, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Estate of Giraldin

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 199 Cal.App.4th 577
**Rehearing Granted**

_____

**Opinion No.** S197694
**Date Filed:** December 20, 2012

_____

**Court:** Superior
**County:** Orange
**Judge:** David R. Chaffee

_____

**Counsel:**

Bidna & Keys, Howard M. Bidna, Richard D. Keys and Jon A. Longerbone for Defendant and Appellant Timothy Giraldin.

Mary Giraldin, in pro. per.; Ross Law Group and Mark A. Ross for Defendant and Appellant Mary Giraldin.

Freeman, Freeman & Smiley, Stephen M. Lowe, Jared A. Barry, Duncan P. Hromadka and Thomas C. Aikin for Plaintiffs and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Richard D. Keys
Bidna & Keys
5120 Campus Drive
Newport Beach, CA 92660
(949) 752-7030

Stephen M. Lowe
Freeman, Freeman & Smiley
1888 Century Park East, Suite 1900
Los Angeles, CA 90067
(310) 255-6100