Smith *v.* Boyd.

FRANK W. SMITH

*v.*

EDWARD D. BOYD.

[Filed January 2d, 1901.]

1. A deed of all her property was made by a newly-married woman to her former guardian, in trust, to pay the income to the settler during her life, and in case she died childless to pay $5,000 to a lady with whom the settler had lived and still lived.—*Held*, that although the deed was, by its terms, irrevocable, it is, under the conditions, voidable.

2. As the deed was advised by the defendant with the intention of benefiting the complainant, the costs of the suit should be paid out of the trust funds.

*Mr. Frank S. Katzenbach,* for the complainant.

*Mr. James S. Aitkin,* for the defendant.

REED, V. C.

The complainant is a daughter of Charles V. Mead. She was left an orphan when seven years of age. Her uncle, Edward D. Boyd, was appointed her guardian. She was twenty-one on May 26th, 1894. From the death of her father she resided with Mr. and Mrs. R. B. Conover, with whom also lived her uncle and guardian, Mr. Boyd. After she attained her majority, her guardian settled his accounts with her and took a release from her. Securities to the amount of about $20,000 were turned over to her, and with her concurrence were left in the hands of James S. Aitkin, an attorney, who had attended to the trust matters.

After she had arrived at legal age, she continued to live with Mrs. Conover as before. On Sunday, May 1st, 1898, she went to Bordentown, without the knowledge of her friends or her former guardian, and was married to Fred. De Forrest Smith. On the next day she returned to the Conovers, and on Monday or Tuesday, told Mrs. Conover of her marriage. On May 12th,

she went with Mr. Boyd to the office of Mr. Aitkin and signed a paper drawn by the latter gentleman, from instruction communicated to him by Mr. Boyd. By this instrument she assigned her property to Mr. Boyd, in trust, for the following purposes:

"To have and to hold the said several bonds and mortgages and shares of stock in trust, to receive and invest the principal sums from time to time as paid in, and to sell the stocks and to appropriate and pay the net income arising from the said fund so invested to the said Frank W. Smith, during the term of her natural life. And in further trust of and after the death of the said Fred. D. Smith (her husband), to transfer and give the said fund so invested as directed to her child or children, and in case I shall die without leaving a child, then in further trust to pay from the said trust funds the sum of $5,000 to Sarah E. Conover. The rest of the said fund to go to Fred. D. Smith, my husband. And if my said husband shall be then dead, then to my heirs at law. And in further trust that in case of the death of my said husband, in my lifetime, the said party of the second part (the trustee) shall and will, at the written request of the said party of the first part, reassign, transfer and set over the said trust funds free and discharged of the trust to him the said party of the first part."

Then follows the clause—

"I do hereby constitute and appoint the said Edward D. Boyd, my true and lawful atttorney, irrevocable in my name or otherwise, to have, use and take all lawful ways and means for the recovery of all the said moneys and interests above mentioned."

This instrument is attacked upon the grounds—*first*, of undue influence; *second*, of mistake; *third*, of want of independent advice; *fourth*, of its improvidence; *fifth*, of the absence of the power of revocation.

In respect to the last ground it is clear, for the complainant admits it, that she was told when she executed the paper that it was irrevocable during her husband's life. There was, therefore, no mistake in failing to insert in the instrument a power of revocation. Indeed, the substantial purpose of the instrument was that it should be, during the life of the husband, beyond the power of the settler to revoke the trust. Her right to her property, free from any interference from her husband, was complete under the statute before the instrument was made. The purpose was to protect her against the solicitations of her husband. If the

trust was revocable, she would have been in a position as unsecure against the cajolery and coercion of her husband as if no trust had been created; or it would have been as easy for him to persuade her to revoke the trust as it would have been to induce her to turn over the property to him, or to use it for his advantage.

Nevertheless, the act of an owner of property which irrevocably puts it beyond his control, is always regarded as an important factor in determining whether a settlement should be permitted to stand. The absence of a power of revocation, in the language of Lord-Justice Turner, in *Toker* v. *Toker, 3 De G., J. & S. 487, 491,* is a circumstance to be taken into account, and is of more or less importance according to the other circumstances of each case. *Hall v. Hall, L. R. 8 Ch. App. 430.*

The complainant was a woman whose business affairs had always been in the hands of her uncle. After she attained her majority and settled with him as trustee she very properly left her investments under his supervision, as they had been before. She would naturally rely upon him for advice in any course of conduct which she wished to adopt concerning her property.

Then, again, from her seventh year, she had made her home with Mr. and Mrs. Conover, with whom she had lived upon the most kindly footing. Indeed, they had stood to her *in loco parentis;* she would naturally be powerfully influenced by any suggestion of theirs in respect to the disposition of her property. She says that the suggestion that she should put her property beyond her own power to spend it for herself and her husband came from Mrs. Conover. She, indeed, insists that Mrs. Conover importuned her to do so in repeated conversations with her. She also says that the suggestion that she should provide that Mrs. Conover should be benefited; in case of the settler's death without children, to the extent of $5,000, came from Mr. Boyd, her uncle. Mrs. Conover says that she does not recall having first suggested to the complainant this disposition of her property. She thinks that it first came from the complainant. Mr. Boyd also says that the proposal to make Mrs. Conover a beneficiary was first spoken of by the complainant.

I have no doubt that the parties give the order of the conversa-

12

tions which led up to the execution of the trust instrument, as they now recall it. The complainant probably exaggerated the extent of the alleged importunity, to which she was subjected, and Mrs. Conover probably fails to recall who first broached the subject in the conversations between herself and the complainant.

I think it most probable that the propriety of putting the property out of the reach of her husband's solicitation was first intimated to the complainant. I think so because it was a reasonable and natural thing for either Mrs. Conover or Mr. Boyd to do. It, in my judgment, was a prudent and creditable suggestion for either of them to make. The girl had made a hasty marriage, without their knowledge or advice, to one whom they undoubtedly thought would, if he could, get control of her property and fritter it away; or would influence her to use up the *corpus* of her estate, so that in the end she would be left penniless.

While I think it is probable that the proposition came from these people of age and business experience, who would naturally think of it, rather than from the girl without business experience, who had made the unannounced marriage, I yet see nothing whatever of fraud in the suggestion. It was made with the very best intention and for what was conceived to be for the welfare of the girl for whom they had cared for so many years. Indeed, her contest now to annul the purpose then accomplished is probably one which will bring to her deep regret in the future.

But the question is not whether the execution of the instrument was wise, but whether she has a right to unsettle the trust which she then created. I am constrained to the conclusion that, under the conditions surrounding its execution, the trust must be declared void. She relied in making it upon the advice of those who had stood to her in the most confidential relations. She saw no one with whom to counsel, aside from the attorney who drew the assignment. He had been the adviser of the trustee during the existence of the trust. It is undoubtedly true that he fully advised her of the irrevocable character of the assignment during her husband's life.

I have no doubt that he also read it to her before she signed it.

When he had done this his function ceased. He was not called upon to advise her as to the prudence of making an irrevocable trust. That he took for granted was settled when he received instructions to draw the paper. He did all that he was called upon to do, and did it in the fairest possible way.

Nevertheless, she did not have that independent advice, in respect to the policy of her conduct, which the cases require. This circumstance, in connection with the facts that Mrs. Conover was given in the instrument a contingent interest, and Mr. Boyd was made her trustee, present conditions which constrain me to advise a decree annulling the trust deed. But as the trust was created without fault of the defendant, and with the best intentions, they should not be burdened with the costs of this litigation. The costs should be paid out of the estate.