THE NATIONAL BANK OF SLATINGTON, complainant-respondent,

*v.*

JOSEPH MASSOPUST, defendant-appellant.

[Submitted December 6th, 1915.    Decided March 6th, 1916.]

1. The legal rule is that where a debtor has fraudulently made a sale or assignment of his property with intent to hinder, delay and defeat a judgment creditor in collecting his debt, such judgment creditor may file a bill in equity to have such sale or assignment set aside, even though the vendee or assignee be a purchaser for full value. But in order to succeed, the judgment creditor must not only prove that the judgment debtor made the sale or assignment for the purpose of hindering, delaying and defeating the collection of the judgment, but also that the vendee or assignee of the property participated in such fraudulent intent, or at the time such sale or assignment took place, had brought to his notice facts and circumstances from which the fraudulent intent of the vendor or assignor was a natural and legal inference.

2. This legal rule, however, is to be applied in such a manner that it will not conflict with another well-settled rule, namely, that a debtor. may prefer one creditor over another.

3. The question whether a debtor in failing circumstances can dispose of all of his property by voluntary assignment, either absolutely or by way of pledge, for the benefit of certain creditors to the exclusion of others, has never been doubted by the courts of this state.

4. No design to defraud creditors will be presumed from the mere fact that a debtor in failing circumstances has sold his property for the purpose of preferring certain creditors over others, although such a transaction may, in conjunction with other facts and circumstances, be a potent factor in determining whether or not there was such a fraudulent design existing in the mind of the debtor at the time he made the conveyance; but, if the facts and circumstances are consistent with an honest purpose, the mere fact that the creditor left out is prevented from collecting his judgment is not sufficient to raise the inference of fraud.

5. Evidence *Held* insufficient, either to show that the judgment debtor's design at the time he conveyed his property was to defraud the judgment creditor, or that the grantee of the deed of conveyance participated in such alleged fraudulent design, even if it existed.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Howell.

*Mr. August C. Streitwolf,* for the appellant.

*Messrs. Beekman & Spencer,* for the respondent.

The opinion of the court was delivered by

KALISCH, J.

The respondent, a judgment creditor of one Charles Seel, filed its bill in the court of chancery asking that a certain deed of conveyance made by Charles Seel of certain premises, previously owned by him, to the appellant, Joseph Massopust, be set aside and declared null and void, and that the premises be sold under an execution issued upon its judgment free from such encumbrance.

The ground upon which this relief was asked for, as stated in the bill, is that the deed of conveyance made by Seel to the appellant was without any consideration and with intent to defraud the respondent.

On the 19th day of May, 1915, two weeks after the cause had been heard, and after the vice-chancellor had rendered his opinion on the facts before him, the complainant asked for and obtained leave to amend its bill and charge therein that the appellant was knowingly a participant in a fraudulent scheme of the judgment debtor, and in collusion with him to prevent the respondent from collecting its debt and to defraud it.

The issue presented by the pleadings at the time of the hearing before the vice-chancellor was whether or not the premises in question were conveyed by Seel to the appellant without any consideration being paid therefor. The amendment allowed and made after the cause was fully heard and decided by the vice-chancellor imported a new and vital issue into the case upon which the appellant had a right to be heard and offer proof. But, as this view would necessitate that the cause be remitted to the court below to take further proof, and since we have arrived at a different result, dispositive of the case from that reached by the vice-chancellor, we prefer to dispose of it on its merits.

From the proofs in the cause it appeared that in November, 1910, the respondent commenced an action in the Middlesex

circuit court against·Seel, on a promissory note made by him for the sum of $900 to one Sam Caskie, which note came into the hands of the respondent, but under what circumstances is not disclosed by the evidence; that Seel pleaded a defence to the action, and that it was not until September 8th, 1914, that respondent obtained a judgment against Seel for the amount of the note, with interest and costs; that on the 24th day of July, 1914, nearly two months prior to the judgment, Seel had conveyed to the appellant the premises in question, which consisted of two lots, a dwelling-house and a little workshop in the rear, for $6,000, subject to a mortgage of $2,000 and an assessment of $279.36, which were considered part of the consideration money, and received a check from the appellant for the sum of $3,760, which Seel deposited to the credit of the bank account of Charles Seel & Sons, of which he was a member. It further appeared that checks were drawn by the firm against the proceeds of the check received from the appellant in payment of liabilities of the firm to its creditors. Seel gave as a reason for selling the property that the firm was hard pushed for money by its creditors, and that in order to save it from failure and ruin · he sold his property.

After the deed was delivered by Seel to the appellant, the appellant demised, August 1st, 1914, the premises conveyed to him to the firm of Charles Seel & Sons for three years, at a yearly rental of $480, payable in equal monthly installments, which rent appears, by receipts in evidence, to have been paid with regularity from August 1st, 1914, by Seel & Sons to a real estate firm, of which the appellant was a member; Seel after the sale continued to use the premises for a dwelling and workshop. It also appeared that the appellant knew that there was a litigation between the respondent and Seel over a note. On this branch of the case the appellant testified:

"Mr. Seel told me that he had this suit on, but he thought he was going to win the suit and that the National Bank of Slatington had more security already than was really due them on the note."

And then again: "Why, Mr. Seel told me it was an accommodation note and he was to receive slate for that note according as he needed the slate." The appellant was then asked:

"Q. Now, at the time he came to you, did he make you a proposition of $6,300 for this property; did he say anything about the litigation at that time?

"A. Well, I asked him, I says, 'How are you making out with the Bank of Slatington;' he says, 'The case is about over and they have got more security than they have outstanding;' * * * he said, 'He never thought that they could get a judgment against him.' "

The appellant admitted that he made no further investigation and said that he relied on what Seel had told him. The appellant further admitted that Seel and he had been on intimate terms of friendship for twenty-five years.

Upon this state of the case the learned vice-chancellor concluded, as follows: "Massopust (the appellant), on the witness-stand, admitted that he knew about the litigation which was pending between the complainant and Seel over the $900 note mentioned in the pleadings. The judgment was entered in September for lack of an adequate defence. Pending the suit, and in the July previous, Massopust took his title. He paid what appears to have been a fair price for the property; at least, the price that he paid is not questioned; but after he took his deed he retained Seel in possession and gave him a lease at $40 a month under which Seel still holds possession of the premises, using the same as his dwelling place and workshop. I think there is no doubt that Massopust knew about Seel's intention, and, this being the case, the transaction must fall."

The above remarks followed a declaration in the opinion of the vice-chancellor, that the facts of the present case resembled very much those before this court in *Tantum* v. *Green, 21 N. J. Eq. 364,* and were within the legal rule there declared.

While we agree with the vice-chancellor that the law, as declared in *Tantum* v. *Green, supra,* was applicable to the facts and circumstances of the present case, we are unable to find in them such a similarity to those developed in *Tantum* v. *Green, supra,* as to justify a similar finding.

The legal rule to be extracted from *Tantum* v. *Green, supra,* is that where a debtor has fraudulently made a sale or assignment of his property with intent to hinder, delay and defeat a judgment creditor in collecting his debt, such judgment creditor may file a bill in equity to have such sale or assignment set aside,

even though the vendee or assignee be a purchaser for full value. But in order to succeed the judgment creditor must not only prove that the judgment debtor made the sale or assignment for the purpose of hindering, delaying and defeating the collection of the judgment, but also that the vendee or assignee of the property participated in such fraudulent intent, or at the time such sale or assignment took place had brought to his notice such facts and circumstances from which the fraudulent intent of the vendor or assignor was a natural and legal inference.

This legal rule, however, is to be applied in a manner so that it will not conflict with another well-settled rule in this state that a debtor may prefer one creditor over another.

Thus, in *Essex Chosen Freeholders* v. *Lindsley, 41 N. J. Eq. 194*, Vice-Chancellor Van Fleet said: "A debtor has a right to prefer one or more of his creditors over the others, and, so long as he exercise this right honestly, his acts, whether the preference be created by sale or pledge, are unimpeachable."

And, in *Muchmore* v. *Budd, 13 N. J. L. J. 25*, the late Chief-Justice Depue, sitting in the Essex circuit, said: "The question is, whether a debtor in failing circumstances can dispose of all of his property by voluntary assignment, either absolutely or by way of pledge, for the benefit of certain creditors to the exclusion of others. This right has never been doubted by the courts of this state." See same case, affirmed by this court, in *53 N. J. Law 369*.

Furthermore, it is obvious that in many cases the natural result of a preference of one creditor over another will be to hinder, delay and oftentimes defeat the collection of a claim of a creditor left out.

Allusion is made to this legal situation for the purpose of demonstrating that no design to defraud creditors will be presumed from the mere fact that a debtor in failing circumstances has sold his property for the purpose of preferring certain creditors over others. Such a transaction may, in conjunction with other facts and circumstances, be a potent factor in determining whether or not there was such a fraudulent design existing in the mind of the debtor, at the time he made the conveyance. But if the facts and circumstances are consistent with an honest

purpose, the mere fact that the creditor left out is prevented from collecting his judgment, is not sufficient to raise the inference of fraud.

In the present case, Seel was engaged in a litigation with the respondent for four years concerning his liability on the note which it held. His testimony was that he firmly believed that he had a valid defence to the action on the note. At any rate, it appears that the respondent permitted the cause to slumber four years before bringing it on for trial. If the case was a plain one and without defence the long delay in bringing it to trial, and reducing the note to judgment while Seel was the owner of property sufficient to pay the claim, is a strong circumstance corroborative of Seel's statement that he believed that he had a valid defence to the note and would win in the end. Furthermore, if it was Seel's intention to defraud the respondent, he had abundant opportunity during the pendency of the law suit to encumber or dispose of it. Seel testified that it was only when other creditors were pressing him that he appealed to the appellant, a friend of twenty-five years' standing, who had the means and ability to purchase the property, to buy it. It was the most natural thing for Seel to apply to a friend for aid. The vice-chancellor found that the price paid for the property was a fair price for it, and the evidence shows that the proceeds received by Seel from the sale went into the firm account of Seel & Sons and disbursed in the payment of creditors of the concern. All this had occurred about seven weeks before the respondent obtained its judgment. We think, therefore, that the facts did not justify the inference drawn by the vice-chancellor that it was Seel's design at the time he conveyed his property to the appellant to defraud the respondent.

But even if it were assumed that there was proof sufficient to warrant an inference that the debtor's design at the time he conveyed his property to the appellant, was to fraudulently defeat the respondent from collecting its claim, the proofs fall short of establishing that the appellant participated in such alleged fraudulent design or that at the time of such sale the appellant had brought to his notice facts and circumstances from which

the fraudulent intent of the debtor was a legal and natural inference:

The vice-chancellor thought that because the appellant knew of the law suit between the respondent and Seel, the appellant was put upon inquiry. As there was nothing more brought to his notice than there was an old law suit over a note pending between Seel and the respondent, and which Seel told the respondent that he expected to win, it is difficult to conjecture what further particular inquiry the appellant was under legal obligation to make. It is fairly within the common experience of everyone, that as a general thing each party to a law suit expects to win. Lawyers undertake the cases of their clients to that end. It would be most unfortunate for the business world if, because of the fact that there was a law suit pending against a business man, that, therefore, a purchaser who bought property of him, with knowledge of such law suit, bought at the peril of having his title to the property invalidated, unless he interviewed the vendor's creditor or his lawyer as to the probable outcome of the litigation, and was guided by the information thus obtained. There was nothing unnatural on the part of the appellant to accept in good faith the statement made by Seel that he would win his cause, in view of the fact that the respondent had failed to bring it on for trial during a period of four years. Nor do we attach any significance to the fact that the appellant subsequently made a lease of the premises to Seel & Sons for three years, and that the premises were being used as a dwelling and shop as theretofore. There is no claim made that the rent reserved is not a fair rental value of the property. Further, it is undisputed that the rent has been punctually paid, to the firm of which the appellant is a member, by Seel & Sons, each month since August 1st, 1914.

We think it was the most natural thing for the appellant to have done, after having bought the property of Seel, in order to aid Seel to pay the creditors of Seel & Sons, and to help save the business of the firm, to permit the firm to remain at a fair rental value at its accustomed place of business.

The decree of the court below will be reversed and the record remitted with direction that the bill of complaint be dismissed, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR—13.