The bill of complaint is filed by the trustee under an intervivos trust, to obtain a settlement and approval of its account. The account, which has been audited by a master, will be approved. The donor or settlor of the trust, Mrs. Parfner, counter-claims to avoid or revoke the trust.
In September, 1926, when the trust agreement was executed, Mrs. Parfner (then Mrs. Bell) was thirty-two years of age and had one child Grace. She was divorced from her husband and supported herself and her daughter by running a small shop. She owned securities worth $41,000, of which she put into the trust $24,000. The trust instrument directs the trustee to dispose of income and principal as follows:
"b. To pay the net income from the trust, quarter-annually, to the Donor for and during the term of her natural life.
"c. After the death of the Donor, to pay the net income, quarter-annually, to Grace A. Bell, daughter of the Donor, until she reaches the age of thirty-five years; and to pay to her the principal of said trust for her own use and benefit on reaching that age.
"d. If the said Grace A. Bell shall survive the Donor but die before reaching the age of thirty-five years, then, on the death of the Donor and on the death of the said Grace A. Bell, to pay over and distribute the principal of said trust to and among the next of kin of the Donor as if she had died possessed thereof and intestate.
"e. If the said Grace A. Bell shall predecease the Donor, then, on the death of the Donor, to pay over and distribute the principal of said trust to and among such persons as the Donor shall designate and appoint in and by her last will and testament to receive the same; and if she shall fail to exercise such power of appointment, then to and among her next of kin."
No power of revocation was reserved by Mrs. Parfner. The settlor's daughter Grace died four years ago. Her nearest relatives are her present husband and her brothers and sisters, *Page 135 
all of whom are parties to the cause but none of whom have appeared. Counter-claimant and her husband are in receipt of a little more than $2,500 a year, including the income from the trust. They are hard-pressed to live on this amount. Mrs. Parfner's property, exclusive of her interest in the trust, has dwindled to about $3,000.
No consideration passed to the settlor for the creation of the trust, but a declaration of trust or other action by the owner of property sufficient to create a trust is effectual, although no consideration passes. West Jersey Trust Co. v. Read, 109 N.J. Eq. 475; Eagles Building and Loan Association v. Fiducia,135 N.J. Eq. 7.
The first ground urged by counter-claimant for relief is mistake; in effect, that she did not intend to create an irrevocable trust and that the instrument should be annulled or else reformed by inserting a power of revocation. The absence of a power of revocation is not, of itself, evidence of mistake which throws on the person upholding a voluntary trust the burden of proving that such a power was intentionally excluded by the settlor. But the absence of the power is a material circumstance of more or less importance according to the other circumstances of the case. Garnsey v. Mundy, 24 N.J. Eq. 243; Smith v.Boyd, 61 N.J. Eq. 175. Likewise, improvidence in the creation of the trust and want of independent advice are not alone sufficient to set aside a donative trust, for except as against creditors a man is privileged to give foolishly and without advice. Farley v. First Camden, c., Co., 107 N.J. Eq. 272.
But improvidence, lack of independent advice, absence of a power of revocation, are circumstances from which, if the case is strong enough, the court may infer mistake. Reuther v.Fidelity Union Trust Co., 116 N.J. Eq. 81.
The creation of the trust in the present instance, even without retaining the right to revoke, does not seem to me to have been improvident. Mrs. Parfner retained not only her business but securities worth $17,000. The fact that what she kept has nearly disappeared, while the trust estate is worth around $20,000, indicates, perhaps, that Mrs. Parfner was wise in placing the major part of her estate beyond her own *Page 136 
control. True, as affairs have turned out, it might have been well if the trust agreement had been more elastic and permitted the trustee to encroach on principal for the benefit of the life tenant. But failure to foresee whatever shall come to pass is common to all mankind. Improvidence is failure to anticipate obviously probable results, and the choice of the plain road to disaster.
There is no suggestion that pressure was put on Mrs. Parfner to create the trust, by her daughter, or the Trust Company, or anyone else. Of her own initiative, she decided to create the trust, and went to the Trust Company to put her plan into effect. There she consulted one of the officers, who advised her as to details. He prepared a draft agreement and sent it to her. She suggested changes and it was redrawn and then executed. Mrs. Parfner testified that she did not foresee that she would be in her present predicament where her income would be insufficient and that no one explained to her that she would not be able to get the money back. The officer of the Trust Company who had charge of the matter at its inception, says that he made clear to her that the trust agreement as drafted would be irrevocable. Both of them, I believe, testified truthfully, in accordance with their memory, but after the lapse of eighteen years, little reliance can be put on the memory of either. Mrs. Parfner has not proved mistake.
We come to the question whether the trust agreement, unreformed, can be revoked. The rule is well settled that, unless power of revocation be reserved, the settlor cannot revoke a voluntary trust except with the consent of all beneficiaries. He cannot revoke a trust created for the benefit of persons yet unborn, or who cannot yet be ascertained. Isham v. Delaware,Lackawanna and Western Railroad Co., 11 N.J. Eq. 227; Simon v.Reilly, 126 N.J. Eq. 546; Clark v. Freeman, 121 N.J. Eq. 35.
The converse also holds that the settlor, acting in concert with all the beneficiaries can revoke; and if he is the only beneficiary, he can revoke by his sole act. Armour v. Murray,74 N.J. Law 351.
By the trust instrument under consideration, the income goes to Mrs. Parfner, the settlor, for life; the corpus, since *Page 137 
the daughter Grace is deceased, goes to whomever the settlor may appoint by will, and in default of appointment, "then to and among her next of kin." If the appointment of the remaindermen could be made now by deed, Mrs. Parfner could appoint herself and then she would clearly be the sole beneficiary and able to cancel the trust. But a power to appoint by will cannot be exercised by deed or otherwise in the lifetime of the holder of the power.United States Trust Co. v. Montclair Trust Co., 133 N.J. Eq. 579.
In determining who are the beneficiaries of the trust, we may exclude possible appointees under the testamentary power. Although any given person may be appointed, he has no interest whatever in the trust pending the death of the settlor; he is not a beneficiary, whose consent to revocation is necessary. So we reach the phrase "next of kin."
By a fair construction of Mrs. Parfner's trust indenture, is "next of kin" a term of purchase, or does it have some other significance? Did she intend that those persons who, at her death, fit the description of next of kin, shall be entitled to receive the trust fund from the trustee? Or did she intend the fund, upon her death, to be turned over to her personal representative to be administered as a part of her estate not disposed of by her last will? To put the second alternative in different phrase, Did she intend merely to let the law relating to decedents' estates, take its course? If the latter construction is correct, the term "next of kin" merely indicates a reversion, retained by Mrs. Parfner and she alone is beneficiary and can revoke the trust. If the first construction is proper, the beneficiaries cannot yet be ascertained and may be still unborn and Mrs. Parfner cannot revoke. The intention of the settlor, as expressed in the trust instrument, governs.
The Restatement — Property, § 314, deals with inter vivos
conveyances in which an interest in land or personalty is apparently given to the grantor's heirs or next of kin, and states the rule that unless a contrary intent is found from additional language, the conveyance should be so construed that nothing passes to the heirs or next of kin, but the estate which seems to be given them remains in the grantor. The *Page 138 
rule "is justified on the basis that it represents the probable intention of the average conveyor. Where a person makes a gift in remainder to his own heirs (particularly where he also gives himself an estate for life), he seldom intends to create an indestructible interest in those persons who take his property by intestacy, but intends the same thing as if he had given the remainder `to my estate.'"
In the Restatement — Trusts, § 127, it is said, "If it is provided by the terms of the trust that the income shall be paid to him [settlor] for life and that upon his death the principal shall be paid as he may by will appoint and in default of appointment to his heirs or next of kin, the fact that he has omitted to reserve a power to appoint in any way except by will is some indication that he intended to make his heirs or next of kin beneficiaries of the trust and to confer an interest upon them of which they cannot be deprived except by a testamentary appointment; but it is not of itself sufficient to overcome the inference that he intended to be sole beneficiary of the trust." See, also, sections 338 and 339 of the Restatement and note in 131 A.L.R. 457. Valuable cases are New Jersey, c., Co. v.Parker, 84 N.J. Eq. 351; 85 N.J. Eq. 567; Newlin v. GirardTrust Co., 116 N.J. Eq. 498; Armour v. Murray, 74 N.J. Law 351;Fidelity, c., Co. v. Williams (Ky.), 105 S.W. Rep. 2d814; Allen v. Safe Deposit and Trust Co. (Md.),7 Atl. Rep. 2d 180; Doctor v. Hughes (N.Y.),122 N.E. Rep. 221; Whittemore v. Equitable Trust Co. (N.Y.),165 N.E. Rep. 454; City Bank v. Miller (N.Y.), 15 N.E. Rep. 2d553; Engel v. Guarantee Trust Co. (N.Y.), 19 N.E. Rep.
2d 673; Long v. Tradesmen National Bank (Pa.),165 Atl. Rep. 56.
The present case is on the borderline and even slight indications of intention may influence the result. Paragraph "d" of the trust agreement which deals with the contingency of the daughter surviving the donor and dying before age thirty-five, limits the corpus to "the next of kin of the donor as if she had died possessed thereof and intestate." If the effect of the term "next of kin" here were clear, we could infer that the same term in paragraph "e" had the same *Page 139 
meaning. But both paragraphs are obscure in this respect. Certainly Mrs. Parfner created the trust primarily for the benefit of herself and her daughter and, after some hesitation, I have come to the conclusion that she had no other beneficiaries in mind. She has now become the sole beneficiary and may revoke.