Filed 8/5/16  Steiger v. Steiger CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LEE STEIGER, as Cotrustee, etc., | D068385 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00072651-PR-TR-CTL) |
| PAUL STEIGER, as Cotrustee, etc., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Julia C. Kelety, Judge.  Affirmed.

Lee Steiger, in pro. per., for Plaintiff and Appellant.

Van Dyke & Associates and Richard Scott Van Dyke, Geoffrey J. Farwell, for Defendant and Respondent.

Lee Steiger petitioned the probate court to compel trustee Paul Steiger to account for the Louise A. Steiger Trust, for the period from January 10, 2000, to April 18, 2011. The court applied California law to administer the trust, and determined that Paul had no duty to account to Lee from January 10, 2000, through February 3, 2006 (the time period

while Louise Steiger, settlor, was acting as cotrustee) or from February 3, 2006, to October 29, 2010 (the time period while Lee was acting as cotrustee with Paul).[1] The court ordered Paul to file an amended account for the time period from October 29, 2010, through December 31, 2014. Lee, appearing in propria persona, has appealed the order, contending that New Jersey law should apply to govern the accounting and the court erred in holding that Paul had no duty to account for the majority of the pre-mortem period. We agree with the court's application of California law and affirm the court's order limiting the scope of accounting.

FACTUAL AND PROCEDURAL BACKGROUND

In May 1990, Louise (mother of Lee and Paul) executed a revocable trust agreement, prepared and certified by a New Jersey attorney (the Trust). The Trust named Louise as the "Donor" and "Trustee," but authorized Louise to resign at any time, upon which Paul and Lee would become successor trustees. The Trust provided for Louise's support during her lifetime and required distribution upon her death of any remainder in equal shares to her sons Paul and Lee. The Trust originally contained Louise's home and various financial instruments, including stocks, bonds, mutual funds, money market funds, government notes and certificates of deposit. Louise's home was sold in 2006, leaving no real property in the Trust. The Trust required the trustee to "render an accounting, from time to time, setting forth the receipts and disbursements of principal and income and assets on hand at the commencement and expiration of the accounting

_____

[1] For clarity and ease of reference, we follow the parties' practice of referring to Lee Steiger, Paul Steiger and Louise Steiger by their respective first names.

2

period."  The Trust also contained the following provision:  "This Agreement shall be construed for all purposes in accordance with the laws of the State of New Jersey."

On January 10, 2000, the Trust was amended to add Paul as cotrustee (2000 Amendment).  On February 3, 2006, Paul, acting through power of attorney for Louise, executed a Second Amendment whereby Louise resigned as cotrustee of the Trust.  On February 8, 2006, Lee accepted appointment as successor cotrustee of the Trust, replacing Louise.  Louise was moved from New Jersey to Utah, where Lee resides, in 2005 or 2006.

Louise revoked Paul's power of attorney in late 2009.  In January 2010, Paul petitioned the District Court of Utah for appointment as Louise's conservator, and was appointed as temporary guardian and conservator in March 2010, over Lee's objection.  In March 2010, Louise signed a document purporting to modify the Trust to make Lee the only beneficiary.[2]  Paul and Lee participated in mediation in Utah and entered into a stipulation, filed with the Utah court on October 28, 2010, whereby Lee agreed to withdraw his objections to Paul's conservatorship and resign as cotrustee in exchange for Paul's agreement to forego any compensation as conservator, limit his trustee fees, and retain a professional guardian to resolve any disputes as to Louise's care.  Louise died in April 2011.  Lee declared under penalty of perjury that Louise "retained capacity up until the final weeks of her life."

---

[2]     The parties disputed the effectiveness of the March 2010 document and the court found it ineffective.  Lee appealed and we affirmed the court's order in an unpublished opinion.  (*Steiger v. Steiger* (July 22, 2015, D066774) 2015 WL 4462203.)

3

Lee filed a petition to compel Paul to provide an accounting throughout his trusteeship (among other things) in November 2013, and filed an amended petition on March 13, 2014. The parties filed simultaneous briefs and replies on the issue of pre-mortem accounting, including whether or not California or New Jersey law should apply to administration of the Trust. In March 2015, the court heard oral arguments of counsel for each party and issued an order holding as follows: (1) California law applies to trust administration issues, including a trustee's duty to account; (2) Paul had no duty to account from January 10, 2000, to February 3, 2006; (3) Paul had no duty to account to his cotrustee from February 3, 2006, to October 29, 2010; and (4) Paul shall file an amended account for the period from October 29, 2010, through December 31, 2014. Lee timely appealed.

DISCUSSION

*A. Appealable Order*

As a threshold matter, we note that an order granting or denying a petition to compel an accounting under the Probate Code[3] is not appealable. (§ 1304, subd. (a)(1) ["With respect to a trust, the grant or denial of the following orders is appealable: (a) Any final order . . . except the following: (1) Compelling the trustee to submit an account or report acts as trustee."].) Therefore, typically "[u]ntil the accounting is made and the order sustaining objections or approving the accounting is entered, there is no appealable order." (*Evangelho v. Presoto* (1998) 67 Cal.App.4th 615, 622 (*Evangelho*).)

---

3    All statutory references are to the Probate Code unless otherwise specified.

However, "[a]n order to account is appealable when it expressly or implicitly decides other issues that could be the subject of an appealable probate order." (*Esslinger v. Cummins* (2006) 144 Cal.App.4th 517, 522 (*Esslinger*).) "An order determining the existence of a power, duty, or right under a trust is appealable." (*Id.* at p. 523, citing §§ 1304, subd. (a), 17200, subd. (b)(2).) Because Lee raises the issue of the scope of Paul's duty to Lee during various time periods of trust administration and the testator's intent with respect to choice of law, the probate court's order denying Lee's petition for an accounting during those periods is appealable.

### B. California Law Applies to Trust Administration

Lee contends the probate court prejudicially erred in interpreting the Trust to allow California law to apply to trust administration. Because "[t]here is no conflict or question of credibility in the relevant extrinsic evidence . . . interpretation of the trust is a question of law for our independent review." (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 604.) As is clear from the plain language of the Trust, and agreed to by parties in the prior appeal, the Trust's provisions are to be construed under New Jersey law. (*Steiger v. Steiger, supra,* 2015 WL 4462203, *2.)

In New Jersey, as in California, courts interpret trusts to give effect to the settlor's intentions. (*Fidelity Union Trust Co. v. Parfner* (N.J. Ch. 1944) 37 A.2d 675, 678 ["The intention of the settlor, as expressed in the trust instrument, governs."].) To do so, the " 'primary inquiry' must be directed to 'the language of the instrument itself.' " (*In re Trust Created by Agreement Dated December 20, 1961* (N.J. 2001) 765 A.2d 746, 755.) If the trust language is clear, and no ambiguity is asserted, the court confines itself to

5

giving effect to the language used.  (*Ibid*.)  "When the instrument itself fails to indicate intent, 'resort may be had to extrinsic evidence to determine the terms of the trust.' "  (*In re Trust Under Agreement of Voorhees* (N.J. App.Div. 1967) 225 A.2d 710, 713, citing 2 *Scott, Trusts* (1939), § 164.1, pp. 1156-1157).

In this case, the Trust instructs:  "This agreement shall be construed for all purposes in accordance with the laws of the State of New Jersey."   Although the plain language of the Trust expressly states Louise's intent with respect to the law to be applied in *construing* the Trust, the Trust does not designate any particular law to govern trust administration.  Other New Jersey trust instruments have explicitly set forth the settlor's intention regarding administration.  (See, e.g., *Matter of Duke* (N.J. Ch.Div. 1995) 702 A.2d 1008, 1014, affd., (N.J. App.Div. 1997) 702 A.2d 1007 ["This [trust] Indenture . . . *is intended to be made, administered and given effect under and in accordance with the present existing laws and statutes of said State* . . . and the validity and construction thereof shall be determined and governed in all respects by such laws and statutes."]; *Fidelity Union Trust Co. v. Price* (N.J. Ch.Div. 1952) 87 A.2d 565, 574*,* affd. in part & revd. in part (N.J. App.Div. 1952) 93 A.2d 321 [" 'This [trust] indenture is executed by a resident of the State of New Jersey in said state, is intended to be made, administered and given effect under and in accordance with the present existing laws and statutes of said state, and the validity and construction thereof shall be determined and governed in all respects by such laws and statutes.' "].)

Appellant has not presented any New Jersey law addressing the issue of which law to apply when administering an inter vivos trust under the present circumstances, nor

6

have we located such authority. With respect to a testamentary trust, one New Jersey court found it reasonable to infer that a testator intended that Pennsylvania should have jurisdiction and supervision over the administration of the trust when the testator was a Pennsylvania resident, his will was probated in that state and he had appointed trustees who were residents of that state. (*Howard Sav. Inst. v. Baronych* (N.J. Ch.Div. 1950) 73 A.2d 853, 856.) However, the court's reasoning relied at least in part on the legal principle that "a testamentary trust in personalty is to be construed according to the law of the testator's domicile," which the court distinguished as inapplicable to an inter vivos trust in personal property. (*Ibid.*) With respect to determinations regarding an inter vivos trust, the New Jersey Supreme Court has observed that the "[r]esidence or domicile of the settlor and of the trustee, location of the assets, place of making the effectuating instruments and the intent of the settlor are factors, but none of itself is absolutely controlling." (*Hooton v. Neeld* (N.J. 1953) 97 A.2d 153, 159.)

In the absence of applicable New Jersey case law, we examine other relevant sources. The Restatement Second Conflict of Laws provides "[t]he administration of an inter vivos trust of interests in movables is governed as to matters which can be controlled by the terms of the trust (a) by the local law of the state designated by the settlor to govern the administration of the trust, or (b) if there is no such designation, by the local law of the state to which the administration of the trust is most substantially

7

related."[4]  (Rest.2d Conf. of Laws (1971) § 272.)  "New Jersey typically gives considerable weight to *Restatement* views . . . ."  (*Citibank, N.A. v. Estate of Simpson* (N.J. App.Div. 1996) 676 A.2d 172, 177 [discussing Rest.2d Conf. of Laws (1971) § 40].)

A leading treatise on trusts further describes the analysis of a settlor's intention as to the law governing trust administration as follows:

> "In the absence of an effective designation by the settlor of the applicable law, the administration of an inter vivos trust of movables is ordinarily governed by the law of the state with which the administration of the trust has its most significant relationship.  Ordinarily, this is the law of the state, if any, in which the settlor has fixed the administration of the trust.  If the settlor has expressly provided in the trust instrument that the trust is to be administered in a particular state, the law of that state ordinarily applies to the administration of the trust, unless the settlor has manifested an intention that it is to be governed by the law of some other state.  Even if the settlor has not expressly designated a state in which the trust is to be administered, the settlor may have done so impliedly.  It is reasonable to infer in most situations that the settlor expected that the trustee would administer the trust at the trustee's domicile or place of business.  . . .  [¶]  . . .  [¶]  . . .

> "As to matters involving trust administration, it is natural to infer that the settlor intended that the law of the place of administration would apply.  This is true, for example, as to the trustee's compensation, investment of the trust funds, and the trustee's powers, duties, and liabilities."

(7 Scott & Ascher, Trusts (5th ed. 2015) § 45.5.2.2 [New Jersey courts have historically relied on various editions of the treatise:  see, e.g., *Matter of Gonzalez* (N.J. Ch.Div. 1992) 621 A.2d 94, 95-96*; Carr v. Carr* (N.J. 1990) 576 A.2d 872, 880; *In re Estate of*

---

4    "The term 'administration of a trust,' as it is used in the Restatement . . . , includes those matters which relate to the management of the trust.  Matters of administration include those relating to the duties owed by the trustee to the beneficiaries.  See Restatement of Trusts (Second), §§ 169-185."  (Rest.2d Conf. of Laws (1971) § 271, com. (a), p. 172.)  The duties referenced include the duty to render an accounting.  (Rest.2d Trusts, § 172.).

*Lange* (N.J. 1978) 383 A.2d 1130, 1137; *In re Estate of Mild* (N.J. 1957) 136 A.2d 875, 883].)

Section 108 of the Uniform Trust Code contains a provision governing the principal place of administration for a trust. (U. Trust Code, §108.) In the official commentary for the Uniform Trust Code, section 108, the drafters note: "While transfer of the principal place of administration will normally change the governing law with respect to administrative matters, a transfer does not normally alter the controlling law with respect to the validity of the trust and the construction of its dispositive provisions." (U. Trust Code, §108, cmt.) New Jersey has recently adopted the Uniform Trust Code, effective July 17, 2016, including section 108. (2015 NJ Sess. Law Serv. Ch. 276 (A.B. 2915); N.J. Stat. Ann. § 3B:31-8.)

The Delaware Supreme Court examined the issue of which state's law to use for trust administration for a trust containing the following language: "[t]his Indenture shall be construed and regulated, and its validity and effect determined by the laws of the State of New Jersey." (*In re Peierls Family Inter Vivos Trusts* (Del. 2013) 77 A.3d 249, 264.) Applying the basic rule of construction that a court should attempt to give effect to each term of an agreement, the court reasoned that the term "regulated" referred to something other than the trust's "validity and effect" and was also distinct from the term "construe," which the court equated with "interpret." (*Id.* at p. 265.) Because "[m]atters concerning a trust's validity, effect, and interpretation are not generally matters of administration," the court concluded that the trust reflected "the settlor's intent that New Jersey law initially govern administration." (*Ibid.*) However, the court noted that the trust contained

"no language evincing the settlor's intent that New Jersey law will *always* govern" trust administration and "[t]he settlor included no restriction on the appointment of out-of-state trustees." (*Ibid.*) The court viewed the settlor's appointment of a New York trustee to administer a trust governed by New Jersey law, as evidence of "her intent to ignore geographical boundaries." (*Ibid.*) The court therefore disagreed with the lower court's conclusion that changing the situs of the trust would not change the law governing administration, holding that "a change in the place of administration accomplished by appointing an out-of-state trustee will effect a change in the law governing administration, if the settlor has not indicated a contrary intent." (*Id.* at p. 266, 268.)

In addition, a New York court examined the issue of which state's law to apply to trust administration for a trust containing a provision "that the trust shall be deemed a New Jersey trust and shall in all respects be governed by the laws of the State of New Jersey." (*Application of City Bank Farmers Trust Co*. (N.Y. Sup. Ct. 1957) 9 Misc. 2d 183, 185.) In that case, the decedent was a resident of New Jersey when the trust was executed, but appointed a New York corporation shortly thereafter to be the trustee, and the trustee's investment powers were defined in the trust by reference to New York law. (*Id.* at pp. 184-185.) The court concluded "it is clear that a trust of a New Jersey resident providing for investment of securities by a New York trustee under provisions of New York statutes will be governed by the New York statutes as construed by the courts of New York with respect to investments made by the trustee and administration of the trust estate." (*Id.* at 186.)

Finally, one California treatise notes that including a choice-of-law clause specifying the law to govern the administration of a trust may be undesirable "because a future trustee may decide that the trust should be relocated to another jurisdiction," therefore the drafter may instead "choose to provide only that the trust shall be *construed* in accordance with [the settlor's state] law." (Drafting California Revocable Trusts (Cont.Ed.Bar 4th ed. 2003) Choice of Law, § 18.9.) " 'Where an instrument has been drawn by one skilled in the law, the presence of legal technical terms is an indication that the legal term of art has been used, and therefore is to be accepted, in accordance with its legal definition.' " (*Copley v. Copley* (1981) 126 Cal.App.3d 248, 271.)

Here, although the Trust provided for New Jersey law as to its construction, it did not expressly indicate Louise's intent regarding which state's law should apply to trust administration. The drafting attorney's decision to use the term "construed" to reference the use of New Jersey law, rather than specifically referencing administration, implies that Louise did not intend to designate a particular state's law to govern trust administration. Louise amended the trust in 2000 to make Paul cotrustee, even though Paul has resided in California for "many, many years," and "administers the trust from California." Moreover, the Trust contemplated, from its inception, that either Paul, Lee or both of them would ultimately be the successor trustee(s), without geographic limitation. Under these circumstances, "it is natural to infer that the settlor intended that the law of the place of administration would apply"—in this case, California. (7 Scott & Ascher, Trusts (5th ed. 2015) § 45.5.2.2.)

11

*C. Scope of Paul's Duty to Account to Lee*

Lee petitioned for accounting under section 17200. Section 17200 allows a beneficiary of a trust to petition the court "concerning the internal affairs of the trust," including compelling the trustee to provide information (pursuant to section 16061), or to account (pursuant to section 16064), to the beneficiary when the trustee has failed to provide the requested information or account within 60 days after a beneficiary's written request if no information or account was provided within the six months preceding the request. (§ 17200, subd. (b)(7)(B), (C).) Pursuant to section 16061, a trustee is required to provide "information to the beneficiary relating to the administration of the trust relevant to the beneficiary's interest" on the beneficiary's "reasonable request," but the requirement is limited by section 16069. (§ 16061.) Likewise, a beneficiary's ability to petition to compel an accounting under section 17200, subdivision (b)(7)(C) is limited by section 16064, which also incorporates the limitations of section 16069. (§§ 17200, subd. (b)(7)(C), 16064, subd. (c).)

Accordingly, regardless of whether a beneficiary proceeds under section 17200, subdivision (b)(7)(B) or (C), a beneficiary's petition is constrained by section 16069, which establishes a "trustee is not required to account to the beneficiary. . . "[i]n the case of a beneficiary of a revocable trust, as provided in Section 15800, for the period when the trust may be revoked," or "[i]f the beneficiary and the trustee are the same person." (§§ 16069, 17200, subd. (b)(B), (C), 16061, 16064, subd. (c).) Section 15800 further provides: "during the time that a trust is revocable and the person holding the power to revoke the trust is competent: [¶] (a) The person holding the power to revoke, and not

12

the beneficiary, has the rights afforded beneficiaries under this division. [¶] (b) The duties of the trustee are owed to the person holding the power to revoke." (§§ 15800; 17200, subd. (a) [incorporating the limitations of § 15800 into § 17200].)

Under the Probate Code, a remainder beneficiary's *right* to an accounting was revoked by the Legislature in 1986 with the enactment of former section 16062, but a remainder beneficiary may still *ask* the court for an order compelling the trustee to account.[5] (*Esslinger, supra,* 144 Cal.App.4th at p. 526, fn. 4.) Section 17200, subdivision (b)(7), allows a remainder beneficiary to petition to compel a trustee to provide an accounting and "[t]he probate court has discretion to grant the petition and order the trustee to account to the remainder beneficiary." (*Id.* at p. 528.) "The court may dismiss a [section 17200] petition if it appears that the proceeding is not reasonably necessary for the protection of the interests of the trustee or beneficiary." (§ 17202.)

"Regarding the scope of the accounting, the code sections grant broad equitable powers for the protection of beneficiaries. 'The matter of determining the appropriate equitable relief to be granted to a beneficiary is generally left to the good judgment of the trial court.' " (*Evangelho, supra,* 67 Cal.App.4th at p. 624.) However, the probate court "must exercise those powers 'within the procedural framework laid out in the governing statutes' of the Probate Code. [Citation.] We review the probate court's construction of

---

[5]    Once the trust becomes irrevocable and the former remainder beneficiary becomes entitled to distributions, such beneficiary is then entitled to an accounting under current section 16062. (§ 16062 [requiring accounting to beneficiaries to whom "income or principal is required . . . to be currently distributed."].)

the Probate Code de novo."  (*Babbitt v. Superior Court* (2016) 246 Cal.App.4th 1135, 1145 (*Babbitt*).)  In contrast, we review the probate court's discretionary orders regarding accounting for abuse of discretion.  (*Christie v. Kimball* (2012) 202 Cal.App.4th 1407, 1414; *Esslinger, supra,* 144 Cal.App.4th at p. 528-529.)

        1.      *Duty to Account to Lee While Louise Was Cotrustee*

Pursuant to section 15800, a trustee has no fiduciary duty towards a remainder beneficiary while a settlor is alive, as "the trustee owes a duty solely to the settlor and not to the beneficiaries."  (*Estate of Giraldin* (2012) 55 Cal.4th 1058, 1066, 1071 (*Giraldin*).)  Following a settlor's death, however, "the beneficiaries have standing to claim a violation of the trustee's duty *to the settlor* to the extent that violation harmed the beneficiaries' interests."  (*Id.* at p. 1071.)  However, "if the trustee's duties are not owed to the beneficiaries at the time of the acts in question, the death of a settlor cannot make them *retroactively* owed to the beneficiaries."  (*Id.* at pp. 1070-1071.)

In *Giraldin,* the California Supreme Court favorably referenced *Evangelho,* which affirmed a trial court's order compelling a trust accounting for time periods prior to the settlor's death, in response to the beneficiaries' section 17200 petition alleging breach of trust.  (*Giraldin, supra,* 55 Cal.4th at pp. 1069-1070; *Evangelho, supra.,* 67 Cal.App.4th at pp. 621, 625.)  In *Evangelho,* trust assets had decreased by over $300,000 during appellant's trusteeship, the appellant had moved trust funds to a joint checking account, wrote checks on the account even after she ceased to be trustee and used the transferred funds for what appeared to be personal expenses.  (*Id.* at p. 625.)  Under these facts, the court of appeal found the beneficiaries "made the necessary showing for an accounting of

14

the trust and joint checking account over the entire period of the trust." (*Ibid.*) "Regarding the scope of the accounting," the Court of Appeal referenced the code's "broad equitable powers for protection of beneficiaries," and emphasized that "[t]he matter of determining the appropriate equitable relief to be granted to a beneficiary is generally left to the good judgment of the trial court." (*Id.* at p. 624.)

In contrast, in *Babbitt,* an appellate court held that the probate court erred in compelling a pre-mortem accounting of revocable trust assets when the trustee was a co-settler, "[i]n the absence of any claim that [decedent cosettler and cotrustee] was incompetent or subject to undue influence." (*Babbitt, supra,* 246 Cal.App.4th at p. 1146.). The court reasoned that settlors may dispose of revocable trust assets as they please and are not subject to fiduciary duties, therefore while decedent was alive and competent, "the cotrustees could not have had any liability for 'fail[ing] to sufficiently preserve' the beneficiaries' interests." (*Ibid.*) The *Babbitt* court distinguished *Giraldin* as involving "a third party trustee who owed a fiduciary duty to the settlor and whose breach of duty could 'substantially harm the beneficiaries by reducing the trust's value against the settlor's wishes,' " which "did not and could not happen [in *Babbitt*] because the trustees and settlors were one and the same." (*Babbitt*, at p. 1147.) The court further observed "some courts have allowed beneficiaries to obtain an accounting for periods before a settlor's death where the settlor had 'lost capacity, was under undue influence, or did not approve or ratify the trustee's conduct.' " (*Id.* at p. 1147, fn. 10.)

Lee contends we should reverse the court's order holding Paul had no duty to account to Lee for the time period in which Louise was alive and acting as cotrustee,

prior to her resignation (January 10, 2000, through February 3, 2006). The court declined to order an accounting for the time period when Louise was serving as cotrustee, reasoning as follows: "[Louise] had the same duty. So to the extent that she's not insisting on accountings and enforcing that provision of the trust, then I don't see that Paul has any duty to account. If he did, it would only be to her, and she didn't apparently request that."[6]

The court correctly applied the law in assessing Paul's duty to Lee. As described in *Giraldin* and *Babbitt,* interpreting a remainder beneficiary's rights under the Probate Code, a trustee has no duty to a beneficiary during the time a trust is revocable. (*Giraldin, supra,* 55 Cal.4th 1058, 1070-1071; *Babbitt, supra,* 246 Cal.App.4th 1135, 1146; §§ 16069, 15800.) A remainder beneficiary therefore can only make the necessary showing to obtain an accounting during the time period in which the trust is revocable pursuant to allegations that the trustee has breached a duty to the settlor. (*Babbitt, supra,* at p. 1147; *Evangelho, supra,* 67 Cal.App.4th 615, 625.) Lee did not proceed under such allegations.

The record on appeal contains no facts establishing that Paul breached any duty to Louise during the 2000 to 2006 time-period, or that Louise was incompetent or subject to

---

6      The court's minute order stated "Paul had no duty to account to Donor while he was serving as Conservatee (1/10/00 - 02/03/06)." Lee characterizes the error as evidence of the probate court's "inaccurate understanding of the facts." However, the transcript of the court's oral ruling on Lee's petition establishes that the court knew Paul and Louise were serving as cotrustees during the 2000 to 2006 time-period, not conservator and conservatee. Therefore, the language of the minute order appears to be a typographical error, rather than evidence of any court confusion regarding the facts.

16

Paul's undue influence during that time.  In contrast, according to Lee, Louise was sufficiently competent to execute an amendment to the Trust in March 2010, and Lee insists that his claim is not one for breach of trust.  Although Lee alleges that Paul improperly transferred funds out of the trust between 2010 and 2011, such time period was well after 2006.  Under these facts, Lee has shown no error of law or abuse of discretion in the court's holding that Paul was not required to account to Lee during the 2000 to 2006 time-period while Louise was a cotrustee.

2.        *Duty to Account to Lee While Lee Was Cotrustee*

Lee further asks us to reverse the portion of the court's order holding that Paul had no duty to account to Lee for the time period Lee served as cotrustee (from February 3, 2006 to October 29, 2010).  The court reasoned that "cotrustees have the same duties, and if there's some problem, they need to address it contemporaneously."   The court therefore denied Lee an accounting for the February 3, 2006, to October 29, 2010 time-period.

Under California law, a cotrustee may not delegate the entire administration of the trust to another.  (§ 16012, subd. (a).)  "If a trust has more than one trustee, each trustee has a duty to do the following:  [¶]  (a)  To participate in the administration of the trust.  [¶]  (b)  To take reasonable steps to prevent a cotrustee from committing a breach of trust or to compel a cotrustee to redress a breach of trust."  (§ 16013.)  "A trustee must exercise reasonable supervision over the conduct of a cotrustee in relation to the trust."  (*Blackmon v. Hale* (1970) 1 Cal.3d 548, 560; 559.)  "While a trustee is not strictly liable for the wrongful acts of a cotrustee, a trustee is responsible for the wrongful acts of a

17

cotrustee to which he consented, or which, by his negligence, he enabled the cotrustee to commit." (*Middlesex Ins. Co. v. Mann* (1981) 124 Cal.App.3d 558, 573.) "The trustee has the power to prosecute or defend actions, claims, or proceedings for the protection of trust property and of the trustee in the performance of the trustee's duties." (§ 16249.)

Both Paul and Lee served as cotrustees between 2006 and 2010. Lee is a certified public accountant, and prepared tax returns for the trust for a number of years. Lee was provided with copies of, or access to, all of the statements of all financial institutions of the Trust, beginning with the time he became cotrustee in 2006. In a letter dated March 2, 2010, Lee requested a formal accounting of the Trust from Paul. Lee resigned as cotrustee on October 28, 2010.

As discussed above, Paul had no duty to Lee to provide an accounting during the period of time in which the trust was revocable and Louise was competent. (*Giraldin, supra,* 55 Cal.4th 1058, 1070-1071; *Babbitt, supra,* 246 Cal.App.4th 1135, 1146; §§ 16069, 15800.) Lee did not proceed on a theory of breach of trust to Louise or establish her incompetence during the February 2006 to October 2010 time-period. Consequently, the probate court did not error in applying the law to rule that Paul had no duty to Lee to provide an accounting for that time period.

On appeal, Lee argues the court's decision denying an accounting from 2006 to 2010 was based on inaccurate information because he did not have equal access to all trust information while he was cotrustee. Lee provides several pages of "facts" in support of his argument that do not include citations to the record. "Rule 8.204(a)(1)(C) of the California Rules of Court requires all appellate briefs to '[s]upport any reference to a

18

matter in the record by a citation to the volume and page number of the record where the matter appears.' It is well-established that '[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived.' " (*Conservatorship of Kevin A.* (2015) 240 Cal.App.4th 1241, 1253.)

Moreover, based on the record provided, it appears few of the "facts" Lee relies on were ever presented to the probate court, and we decline to consider them now. In any case, such facts are unlikely to have changed the court's decision, which was based (at least in part) on Lee's fiduciary duties as a cotrustee from 2006 through 2010 and his failure to take any contemporaneous action for Louise's benefit during that time. The court was not sympathetic to Lee's argument that he did not get all the information everything he wanted while acting as cotrustee, in light of his equal responsibility for any accounting and transactions during that time. Under such facts, the probate court did not abuse its discretion in determining that equity did not require Paul to provide a formal accounting to Lee, several years after the fact, for a period of time when Lee was a cotrustee with an equal fiduciary duty to ensure that the Trust was being used to benefit Louise.

## DISPOSITION

The probate court's order denying accounting for the period of January 10, 2000, to October 29, 2010 is affirmed. Paul Steiger shall recover his costs on appeal.

19

O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

NARES, J.